J-S03012-24

2024 PA Super 67

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALLEN BRANTHAFER | : | |
| | : | |
| Appellant | : | No. 1745 MDA 2022 |

Appeal from the PCRA Order Entered December 12, 2022
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000265-2000

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

OPINION BY OLSON, J.:                                    **FILED: APRIL 5, 2024**

Appellant, Allen Branthafer, appeals from the December 12, 2022 order entered in the Court of Common Pleas of Huntingdon County that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.[1]  We affirm.

_____

[1] Appellant's notice of appeal purports to appeal from the December 12, 2022 order dismissing Appellant's PCRA petition.  A copy of an order dismissing Appellant's petition, which was attached as an exhibit to the notice of appeal, was timestamped as having been filed on December 6, 2022.  The December 6, 2022 order, however, is not part of the certified record.  Instead, the certified record includes an order dismissing Appellant's PCRA petition that was filed on December 12, 2022.

Our review reveals that, on December 6, 2022, the PCRA court filed a memorandum opinion detailing its reasons for dismissing Appellant's petition. At the conclusion of the opinion, the PCRA court stated, "For the Reasons set forth, an order dismissing [Appellant's] second-amended PCRA petition **will be** entered."  PCRA Court Opinion, 12/6/22, at 22 (emphasis added).  The PCRA court docket contains an entry confirming that a memorandum opinion was filed on December 6, 2022.  **See** PCRA Court Docket at 51 (December 6, 2022 entry).  Absent from this docket entry is a notation that an order

On February 16, 2002, a jury convicted Appellant of second-degree murder, criminal conspiracy, burglary, robbery, and two counts of theft by unlawful taking.[2]  Verdict Slip, 2/16/02; **see also** N.T., 2/13/02, at 840.[3]  Appellant's convictions stemmed from an incident that occurred on April 17, 2000, whereby Appellant shot and killed the victim at his hunting cabin in Huntingdon County, Pennsylvania.  Prior to the shooting, Appellant and two accomplices, Tommy Duvall ("Duvall") and Chris Muckle ("Muckle"),

_____

dismissing the petition was filed in conjunction with the December 6, 2022 opinion.  **Id.**

On December 12, 2022, the PCRA court entered an order dismissing Appellant's petition.  PCRA Court Order, 12/12/22.  The entry of this order is confirmed by a review of the PCRA court docket, although we note that the entry was incorrectly described as "order denying post-sentence motion." PCRA Court Docket at 51 (December 12, 2022 entry) (extraneous capitalization omitted).

Because the December 6, 2022 order dismissing Appellant's petition is not part of the certified record, we deem Appellant's appeal to lie from the December 12, 2022 order dismissing his petition.  **See Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (*en banc*) (stating that, "under the Pennsylvania Rules of Appellate Procedure, any document which is not part of the officially certified record is deemed non-existent - a deficiency which cannot be remedied merely by including copies of the missing documents in a brief or in the reproduced record"), *appeal denied*, 916 A.2d 632 (Pa. 2007). The caption has been corrected accordingly.

[2] 18 Pa.C.S.A. §§ 2502(b), 903(a)(1), 3502(a), 3701(a)(1)(i), and 3921(a) (2 counts), respectively.

[3] We note that Appellant's trial took place from February 13, 2002, to February 16, 2002.  Each volume of the notes of testimony from trial, however, is dated February 13, 2002, and the notes of testimony are continuously paginated for all four days of trial.  As such, we refer to the notes of testimony by the date February 13, 2002.

burglarized a nearby home and stole several guns and a cross-bow. In fleeing the nearby home out of fear of getting caught, Appellant and the two accomplices came upon the victim's hunting cabin where the victim's truck was parked. While the accomplices were attempting to steal the truck to use as a get-away vehicle, the victim confronted the men. During the interaction between the victim and the two accomplices, Appellant appeared and shot the victim four times. After hiding the victim's body under a canoe behind the hunting cabin, the three individuals fled in the victim's truck. The three individuals were apprehended shortly thereafter. *See generally*, PCRA Court Opinion, 12/6/22, at 2-9.

On May 20, 2002, Appellant was sentenced to life imprisonment for his second-degree murder conviction.[4] Sentencing Order, 5/20/02. On August 17, 2004, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal on December 22, 2004. *Commonwealth v. Branthafer*, 860 A.2d 1124, 1699 MDA 2003 (Pa. Super. filed Aug. 17, 2004) (non-precedential decision), *appeal denied*, 864 A.2d 528 (Pa. 2004). Appellant did not seek further discretionary review by the Supreme Court of the United States. As such, Appellant's judgment of sentence became final March 22, 2005, upon expiration of the time for seeking discretionary review with the Supreme Court

---

[4] Appellant was also ordered to pay the costs of prosecution ($1,200.75), as well as restitution in the amount of $12,915.30. Sentencing Order, 5/20/02.

of the United States. **See** U.S. Sup. Ct. R. 13(1) (stating, "A petition for a *writ* of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."); **see also** 42 Pa.C.S.A. § 9545(b)(3) (stating, "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review").

On March 15, 2005, Appellant filed *pro se* a PCRA petition, his first. PCRA counsel was subsequently appointed to represent Appellant, and filed an amended petition on August 15, 2006.[5] After conducting multiple hearings related to Appellant's petition, the PCRA court denied the petition on September 28, 2011. On December 24, 2012, this Court affirmed the PCRA court order denying Appellant's petition,[6] and our Supreme Court denied

---

[5] For ease of identification in discussions *infra*, Appellant's PCRA counsel associated with the 2005 PCRA petition is identified as "initial-PCRA counsel."

[6] In affirming the PCRA court order denying Appellant's petition, this Court held that Appellant's issue – that "the PCRA court erred in applying the **Strickland**[ **v. Washington**, 466 U.S. 68 (1984)] performance/prejudice test for ineffective assistance of counsel, rather than the *per se* ineffective assistance of counsel rule found in **United States v. Cronic**, [466 U.S. 648 (1984)]" – was waived for failure to raise the issue before the PCRA court or in his concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). **Branthafer**, 64 A.3d 25, 2012 WL 7831640, 1878 MDA 2011, at 4.

Appellant's petition for allowance of appeal on June 27, 2013. ***Commonwealth v. Branthafer***, 64 A.3d 35, 2012 WL 7831640, 1878 MDA 2011 (Pa. Super. filed Dec. 24, 2012) (unpublished memorandum), *appeal denied*, 64 A.3d 35 (Pa. 2013).

On February 1, 2014, Appellant filed *pro se* a petition for a *writ* of *habeas corpus* in the United States District Court for the Middle District of Pennsylvania, asserting claims of ineffective assistance of initial-PCRA counsel and ineffective assistance of trial counsel. ***Branthafer v. Glunt***, 2015 WL 5569128, at *4 (M.D.Pa. filed Sept. 22, 2015) (unpublished memorandum), *appeal denied*, 15-3571 (3rd Cir. filed Mar. 24, 2016). On September 22, 2015, the United States District Court for the Middle District of Pennsylvania denied Appellant's petition and dismissed the case. ***Branthafer***, 2015 WL 5569128, at *1.

On July 26, 2018, Appellant filed *pro se* the instant PCRA, his second. Counsel was appointed and filed an amended petition on July 31, 2019. Thereafter, Appellant retained PCRA counsel, and new PCRA counsel filed a second amended petition on July 28, 2021.[7] The PCRA court conducted an

---

[7] On June 6, 2022, Appellant filed *pro se* a motion requesting that his privately retained counsel be appointed to represent him. The PCRA court granted Appellant's request on June 9, 2022.

evidentiary hearing on January 5, 2022. On December 12, 2022, the PCRA court dismissed Appellant's petition. This appeal followed.[8]

Appellant raises the following issues for our review:

[1.] Is the limitation period under 42 [Pa.C.S.A.] § 9545(b) non-jurisdictional?

[2.] If the PCRA time-limitation is "jurisdictional," is the time-limitation, as applied to [Appellant], unconstitutional?

[3.] Did the [PCRA] court err in finding that [Appellant's] first claim was untimely?

[4.] Did the [PCRA] court err in finding that [Appellant's] fourth claim was untimely?

[5.] If ***McCoy***[ ***v. Louisiana***, 584 U.S. 414 (2018)] did not announce a new constitutional rule, did the [PCRA] court err in finding that [Appellant's] fifth claim was untimely?

[6.] Did the [PCRA] court err in finding that [Appellant's] first claim lacked merit?

[7.] Did the [PCRA] court err in finding that [Appellant's] second claim lacked merit?

[8.] Did the [PCRA] court err in finding that [Appellant's] third claim lacked merit?

Appellant's Brief at 8 (extraneous capitalization omitted).[9]

**Jurisdictional Argument**

---

[8] Both Appellant and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925. In its 1925(a) opinion, the PCRA court explained that the PCRA court judge who entered the December 12, 2022 dismissal order retired on December 31, 2022. The PCRA court adopted the retired jurist's December 6, 2022 opinion that accompanied the order dismissing the petition. PCRA Court Opinion, 2/13/23.

[9] For ease of disposition, Appellant's issues have been reorganized.

It is a well-settled principle that if a PCRA petition is untimely, neither the PCRA court nor this Court has jurisdiction over the petition and cannot address the substantive claims. **Commonwealth v. Reid**, 235 A.3d 1124, 1143 (Pa. 2020), *citing* **Commonwealth v. Chester**, 895 A.2d 520, 522 (Pa. 2006). Recognizing this well-settled principle, Appellant's first issue, nonetheless, alleges that the one-year time-bar pertaining to the filing of PCRA petitions, as set forth at 42 Pa.C.S.A. § 9545(b)(1),[10] is not jurisdictional in nature. Appellant's Brief at 71-73. Appellant asserts that our Supreme Court's "decisional law declaring the PCRA deadlines[, set forth in Section 9545(b)(1),] as jurisdictional was erroneously decided and that the time-provision[ of one year] was intended to be a statute of limitations." **Id.** at 71. Appellant argues that "[t]he time-bar was never originally intended to serve as a jurisdictional hurdle" as evidenced by the fact that Section 9545(b)(1) never utilizes the word "jurisdiction." **Id.** at 71-72. Rather, Appellant contends our Supreme Court's "holdings to the contrary have resulted in what should have been unnecessary attempts to escape the Gordian [K]not[11] of its own creation in rare circumstances." **Id.** at 72.

---

[10] Section 9545(b)(1) states that a PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves" one of the three enumerated exceptions, as discussed in greater detail *infra*. 42 Pa.C.S.A. § 9545(b)(1).

[11] The cutting of the Gordian Knot is an Ancient Greek legend associated with Alexander the Great[, while he was] in Gordium[,] Phrygia [(an ancient city

Alternately, Appellant's second issue asserts that, if Pennsylvania courts continue to apply Section 9545(b)(1) as a jurisdictional rule, then Section 9545(b)(1) is unconstitutional. *Id.* at 73-79. Appellant contends that the jurisdictional nature of the time limitation violates his due process rights and right to be free from cruel and unusual punishment, *i.e.*, imprisonment, under the Pennsylvania and United States constitutions. *Id.* at 73. Specifically, Appellant asserts that the time limitation "deprives [him] of an enforcement mechanism for his due process right to effective PCRA counsel." *Id.* at 78-79 (asserting that, the jurisdictional time-bar prevents him from raising an ineffectiveness of PCRA counsel claim in a timely petition). Appellant contends that because the time limitations prevent him from presenting a "timely petition," he is deprived of his freedom of movement and freedom from punishment as an innocent man, which constitutes cruel and unusual punishment. *Id.* at 76-77.

In the seminal case, **Commonwealth v. Peterkin**, our Supreme Court, for the first time, declared that the PCRA one-year time-bar under Section

---

located in modern-day Turkey)], regarding a complex knot that tied an oxcart. Reputedly, whoever could untie [the knot] would be destined to rule all of Asia. In 333 [B.C.,] Alexander [the Great] was challenged to untie the knot. Instead of untangling it laboriously as expected, he dramatically cut through it with his sword, thus exercising another form of mental genius. It is thus used as a metaphor for a seemingly intractable problem which is solved by exercising an unexpectedly direct, novel, rule-bending, decisive, and simple approach that removes the perceived constraints.

https://en.wikipedia.org/wiki/Gordian_Knot (last visited Feb. 27, 2024).

9545(b)(1) was jurisdictional in nature. *Commonwealth v. Peterkin*, 772 A.2d 638, 641 (Pa. 1998); *see also Reid*, 235 A.3d at 1167. The *Peterkin* Court further rejected the argument that the jurisdictional nature of the one-year time-bar was unconstitutional, finding no due process violation, as the time for filing a petition is reasonable, and no *ex post facto* violation existed because the time limitation "is procedural in nature and does not fall within the categories of retrospective laws prohibited by the *ex post facto* clause." *Peterkin*, 772 A.2d at 642-643, n.8 (stating, the PCRA time limitation "strikes a reasonable balance between society's need for finality in criminal cases and the convicted person's need to demonstrate that there has been an error in the proceedings that resulted in his[, or her,] conviction"). For more than two decades, Pennsylvania courts have steadfastly held to the view that the PCRA one-year time-bar was jurisdictional in nature and constitutionally sound. *See Reid*, 235 A.3d at 1167 (collecting cases that have held to the principles that the PCRA time limitation is jurisdictional in nature and constitutional).

Recently, our Supreme Court, in *Reid*, *supra*, roundly rejected a call for "fine-tuning" the precedent first announced in *Peterkin*. *Reid*, 235 A.3d at 1168 (rejecting the argument that a court's inability to afford a petitioner relief based on lack of jurisdiction means the PCRA failed to afford sufficient due process and the statute is, therefore, constitutionally infirm). Finding "no present need" to abandon decades-old PCRA jurisprudence, the *Reid* Court further remarked that the doctrine of *stare decisis* required continued

adherence to the well-enshrined principle first set forth in **Peterkin**.[12] **Id.** at 1169. Thus, bound by the decisions of our Supreme Court, we continue to adhere to the principle that the PCRA time limitation is jurisdictional in nature. **See Reid**, 235 A.3d at 1159 (stating, "[i]t is elementary that unless the United States Supreme Court reverses a decision of [our Supreme Court], or [our Supreme Court] overrules its prior decision, the law emanating from the decision remains law" (citation and original quotation marks omitted)).

Regarding Appellant's second issue that the jurisdictional time limitation of the PCRA violates his due process rights and right against cruel and unusual punishment, we find this argument to be of no avail. To reiterate, Appellant's constitutional challenge rests on the argument that the jurisdictional time-bar prevents him from asserting an ineffectiveness claim involving initial-PCRA counsel. Appellant's Brief at 78. After careful review, we believe the statutory

---

[12] As described by the **Reid** Court, the doctrine of *stare decisis* ensures "evenhanded, predictable, and consistent development of legal principles, foster[s] reliance on judicial decisions, and contribute[s] to the actual and perceived integrity of the judicial process." **Reid**, 235 A.2d at 1168 (citation and original brackets omitted).

The **Reid** Court further explained that because the precedent set forth in **Peterkin** – the PCRA one-year time-bar is jurisdictional in nature – rests on statutory interpretation, verses constitutional construction, the doctrine of *stare decisis* holds "greater sanctity" since the legislature is free to amend a statute if it so disagrees with a court's interpretation. **Id.** at 1168-1169 (noting that, "[a] statutory construction, once made and followed, should never be altered upon the changed views of new personnel of the court").

structure and judicial construction of the PCRA both diminish and refute the due process claims raised by Appellant.

As discussed *supra*, the **Peterkin** Court set forth the well-settled principle that the PCRA jurisdictional time limitation is constitutionally sound and does not violate, *inter alia*, a petitioner's due process rights. **Peterkin**, 722 A.2d at 643, n.8. As the **Peterkin** Court explained, "[b]ecause the one-year period within which petitions normally must be filed is sufficiently generous to prepare even the most difficult case, and because the exceptions to this filing period encompass government misconduct, [newly-discovered facts], and constitutional changes," the PCRA jurisdictional time-bar is both reasonable and constitutional. **Id.** at 643 (noting, "[t]he purpose of law is not to provide convicted criminals with the means to escape well-deserved sanctions, but to provide a reasonable opportunity for those who have been wrongly convicted to demonstrate the injustice of their conviction"). The PCRA time limitation "strikes a reasonable balance between society's need for finality in criminal cases and the convicted person's need to demonstrate that there has been an error in the proceedings that resulted in his[, or her,] conviction." **Id.**

Moreover, our Supreme Court recently held, in **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), that a petitioner may raise an ineffective assistance of initial-PCRA counsel claim at the first opportunity to do so, either *via* new PCRA counsel or *pro se*, even if raised for the first time on appeal. **Bradley**, 261 A.3d at 401. In so holding, however, our Supreme Court did

not overrule the well-established principle that a claim of ineffective assistance of initial-PCRA counsel does not automatically overcome the PCRA jurisdictional one-year time-bar.[13] *Id.*; *see also Commonwealth v. Yarris*, 731 A.2d 581, 586 (Pa. 1999) (stating, "an untimely petition will not be addressed simply because it is couched in terms of ineffectiveness"); *Commonwealth v. Beasley*, 741 A.2d 1258, 1286 (Pa. 1999) (stating that, "the fact that some of [a petitioner's] claims are couched in terms of ineffectiveness[] will [not] save [a] petition from application of [S]ection 9545"); *Commonwealth v. Pursell*, 749 A.2d 911, 915 (Pa. 2000) (finding that, a claim of ineffective assistance of counsel does not overcome the jurisdictional time-bar, and a petitioner is still required to plead and prove one of the enumerated exceptions provided in Section 9545(b)(1)(i – iii) based on the ineffectiveness claim); *Commonwealth v. Miller*, 2023 WL 6378154, at *3 (Pa. Super. filed Sept. 29, 2023) (non-precedential decision) (analyzing Miller's ineffectiveness claim within the legal framework of the PCRA's established exceptions to the jurisdictional time-bar rather than as a claim that automatically overcame the jurisdictional time-bar). Thus, *Bradley*

_____

[13] Bradley's PCRA petition was timely filed pursuant to Section 9545(b)(1), thus making the invocation of one of the three enumerated exceptions set forth therein unnecessary. As such, in reaching its holding, the *Bradley* Court did not explicitly address a circumstance involving an untimely PCRA petition, which is the situation in the case *sub judice*. Notwithstanding, as the *Peterkin* Court recognized, the permissible filing period of the PCRA may be extended where governmental interference, newly-discovered facts, or constitutional developments are present. These exceptions offer reasonable opportunities to challenge wrongful convictions outside the one-year limitation.

expanded the opportunities afforded a petitioner to raise ineffectiveness claims, albeit still requiring that the petitioner satisfy the jurisdictional one-year time-bar requirement.

Finding no case law, and Appellant has not cited any, that overruled the constitutional validity of the PCRA jurisdictional one-year time-bar, we continue to adhere to the principle that the PCRA time limitation is constitutionally sound and, therefore, does not violate Appellant's constitutional rights. **See Reid**, 235 A.3d at 1159.

**Timeliness Exceptions**

Appellant's third, fourth, and fifth issues challenge the trial court's order dismissing his petition on the ground that Appellant failed to plead and prove one of the timeliness exceptions enumerated in Section 9545(b)(1), as discussed *infra*. Appellant's Brief at 35-42, 60-70. In addressing Appellant's issues, we are mindful of our well-settled standard and scope of review of an order denying a PCRA petition. Proper appellate review of a PCRA court's dismissal of a petition is limited to an examination of "whether the PCRA court's determination is supported by the record and free of legal error." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lawson**, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding."

*Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

If a PCRA petition is untimely, courts lack jurisdiction over the claims and cannot grant relief. *Reid*, 235 A.3d at 1143 (stating, "[w]ithout jurisdiction, [courts] simply do not have legal authority to address the substantive claims" (citation and original quotation marks omitted)). As discussed *supra*, Appellant's judgment of sentence became final on March 22, 2005. Appellant filed *pro se* his current PCRA petition on July 26, 2018, more than 12 years after the deadline for filing a timely PCRA petition. Therefore, Appellant's current PCRA petition is patently untimely.

If a PCRA petition is untimely, the jurisdictional time-bar can only be overcome if the petitioner alleges and proves one of the three statutory exceptions, as set forth in 42 Pa.C.S.A. § 9545(b)(1). *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017). The three narrow statutory exceptions to the one-year time-bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly[-]discovered facts; and (3) an after-recognized constitutional right." *Commonwealth v. Brandon*, 51 A.3d 231, 233-234 (Pa. Super. 2012), *citing* 42 Pa.C.S.A. § 9545(b)(1)(i - iii). A petition invoking an exception to the jurisdictional time-bar must be filed

within one year of the date that the claim could have been presented.[14]  42 Pa.C.S.A. § 9545(b)(2) (effective Dec. 24, 2018).  If a petitioner fails to invoke a valid exception to the PCRA time-bar, courts are without jurisdiction to review the petition and provide relief.  *Spotz*, 171 A.3d at 676.

Upon conclusion of the evidentiary hearing, the PCRA court made the following findings of fact:

1.     Governor Walker, Jr. [("Walker")] was the principal witness called by [Appellant] at [the PCRA evidentiary] hearing.

2.     [Walker] is 45 [years old], and resides in Huntingdon County.

3.     [Walker] acknowledged that he has an extensive criminal history including a conviction for robbery.

4.     [Walker] also testified that since 2012, when he was last released from jail, he has not been [involved in any criminal activity], has worked steadily at a good job, and is married with children.

5.     [Walker] testified he grew up in [Mount] Union, Pennsylvania with [Appellant, Duvall, Muckle,] and Jason Taylor [("Taylor")].

6.     [Walker] always called [Appellant] "Shorty", and said he considers [Taylor] his cousin since they were raised together.

---

[14] We note that effective December 24, 2018, the time-period in which to file a petition invoking one of the three exceptions was extended from 60 days to one year.  42 Pa.C.S.A. § 9545(b)(2).  This amendment applies to claims arising one year prior to the effective date of the amendment, *i.e.*, December 24, 2017, or later.  Act. 2018, Oct. 24, P.L. 894, No. 146, § 3.  Because Appellant filed his instant PCRA petition on July 26, 2018, this amendment applies, and Appellant had one year in which to file a petition that validly invoked any of the exceptions to the PCRA's jurisdictional time-bar.

7.      [Walker] recalled meeting his cousin, [Taylor,] at [a Mount] Union [gas station convenience store] in April[ 2000,] to return a [video game consol].

8.      [Walker] explained that Taylor [] stayed with him a few days during a period of time[, prior to April 2000,] when Taylor and his girlfriend[,] Audra McCracken [("McCracken"),] were fighting.

9.      The couple [reconciled,] and Taylor [] called [Walker] and told him that [they] would be in the vicinity of Mount Union and that he wanted to retrieve his [video game consol].

10.     [Walker] told [Taylor] to meet him at the [convenience] store since [Walker] had a reason to go there.

11.     Walker testified his reason for going to the [convenience] store was to consummate a drug [transaction] with [Muckle].

12.     Muckle[] paged [Walker] from the pay [tele]phone near the entrance to the [convenience] store.

13.     [Walker] got a ride to [the convenience store, where he] saw Taylor and McCracken.

14.     [Walker] also [] saw [Duvall] inside the [convenience] store.

15.     [Walker] did not see [Appellant either] inside or outside of [the convenience store].

16.     [Muckle] was standing by the pay [tele]phone.

17.     According to Walker, he and Muckle walked across the street to Muckle's apartment to [complete] the [drug transaction.]

18.     At the apartment, [Walker] recalled seeing Muckle's girlfriend [] and her kids.

19.     [Walker] did not see [Appellant in the apartment] but also said he did not search the apartment.

20.     [Walker] speculated, however, that had [Appellant] been [in the apartment,] he would have appeared at the sound of [Walker's] voice.

21. In his testimony, [Walker] was clear that his time at [the convenience store] and in [Muckle's] apartment was very short.

22. [At the time, Walker] was wearing an ankle bracelet [as part of his] state parole and had to [return] home.

23. At the apartment, he said, "I just came in real quick, [did] what I had to do, and left[."]

24. [Walker] acknowledged receiving a letter from [Appellant].

25. [Walker] responded immediately to [Appellant's] letter.

26. In his letter, [Walker] posed a series of questions as to how he could help.

27. [Walker] reached out[] to [Appellant's mother] who told him about the website she started.

28. [Walker] went to the [web]site[,] prepared an affidavit[,] and sent it to [Appellant].

29. [Taylor and McCracken] testified at the PCRA [evidentiary] hearing.

30. [Taylor] testified that like [Walker,] he had an extensive criminal history that included a conviction for burglary.

31. [Taylor] related that he grew up with [Appellant] and that [Appellant] was one of his best friends.

32. [In] April 2000, [Taylor] and [McCracken] broke up [] but[,] eventually[,] they got back together.

33. [Taylor] said [that] April 17, 2000[,] was [his and McCracken's] anniversary[,] and they went to Lewistown[, Pennsylvania,] to get her ring fixed.

34. "It was our anniversary," [Taylor] said.

35. [Taylor] testified that he and [McCracken] have remained in constant contact for the past 22 years since they have a [child together] that is now 23 [years old].

36. On the return trip to Huntingdon [County on April 17, 2000, Taylor and McCracken] stopped at the Mount Union [convenience store] so he could retrieve his [video game consol] from his cousin[, Walker].

37. [Taylor] testified that [Walker] suggested [the convenience store] as the place to meet for the exchange.

38. At [the convenience store, Taylor] said, [McCracken,] who was driving[ the couple's vehicle,] parked in front of the entrance to the [convenience] store.

39. [Taylor] testified he saw [Duvall] and [Muckle] standing in front of the [convenience] store.

40. [Duvall] came over to the [vehicle] and engaged [McCracken] in conversation.

41. Oddly, Taylor testified he got his [video game consol] but could not recall seeing [Walker].

42. [Taylor] testified he did not see [Appellant].

43. At the trial of this case, [Taylor's] testimony was[,] in most respects[,] in accord with his PCRA [evidentiary hearing] testimony.

44. There was[,] however[,] a [single] significant difference [between Taylor's trial testimony and the testimony presented at the PCRA evidentiary hearing].

45. At trial, [Taylor] told the jury that he and [McCracken] were at [the convenience store] because "I had to get my [video game consol] from my cousin[."]

46. In short, [Appellant] did not identify [Walker] as his cousin [during his testimony at trial].

47. [Taylor] testified that sometime before Christmas in [December] 2017[,] he ran into [Appellant's] sister [at a bar in] Mount Union[.]

48. [Appellant's sister] asked if [Taylor] had seen the website her mother created in 2017[.]

49. Taylor [] told [Appellant's sister] he had not seen the website but would check it out.

50. [Taylor visited the website], and testified the ball started rolling and resulted in [his] affidavit dated December 17, 2017.

51.  [McCracken] testified at the PCRA [evidentiary] hearing and corroborated[,] in most relevant respects[,] the testimony of [Taylor.]

52.  [McCracken] reported [that] she lived in Huntingdon County her [entire] life and has an associate's degree.

53.  [McCracken] confirmed that [Taylor] is the father of [their] 23-year-old [child].

54.  [McCracken] related that she knew [Appellant] through [Taylor].

55.  [McCracken] repeated her trial testimony that she could not recall seeing[ Appellant, Muckle, or Walker] that April evening at [the convenience store].

56.  [McCracken] said she and [Taylor] were at [the convenience store] that night "no more than ten minutes" and that during that time she had a conversation with [Duvall].

57.  [Appellant's] mother was a witness at the PCRA [evidentiary] hearing.

58.  [Appellant's mother] testified that since the trial she[,] as well as [Appellant's] father and his [two] sisters[,] have tried to help [Appellant] prove his innocence.

59.  [Appellant's mother] testified that [Appellant,] his sisters[,] and [Taylor] grew up together.

60.  [Appellant's mother] indicated that in 1997[,] she[, Appellant,] and her [] daughters moved to York, [Pennsylvania].

61.  [Appellant's sister, who testified at the PCRA evidentiary hearing,] subsequently moved back [to Mount Union].

62.  [Appellant's mother stated] her daughters[] continued the relationship with [Taylor] after the trial albeit not as much.

63.  [Appellant's mother] testified [that, in 2017,] she paid to have a website created.

64.  The name of the [web]site was "Free Shorty[."]

65. The purpose of the [web]site, [Appellant's mother] said, was to locate anybody that had [] evidence or may have seen something.

66. [Appellant's mother] indicated they were looking for witnesses that may have been at [the convenience store on the evening of the incident].

67. [Appellant's mother] said[ Appellant] drafted specific questions for [Taylor] since he was there that night and [Appellant] did not know the extent of what he knew.

68. [Appellant's mother] considered the website a success since they were able to obtain affidavits from [Taylor] and [Walker].

69. [Appellant's mother] said she knew [Walker] since "[they] were all friends growing up[.]"

70. [Appellant] testified at [the] PCRA [evidentiary] hearing.

71. [Appellant explained] that his highest level of education was ninth grade but that he obtained his [general educational diploma while] in jail, and he has taken college courses.

72. [Appellant] acknowledged that he grew up in Mount Union with [Taylor] and [Walker].

73. [Appellant] testified that he and his sisters and mother moved to York in 1997.

74. [Appellant stated that] his family [was] his only resource[] to develop leads and to investigate his case.

75. [Appellant] said that he figured [the convenience store] was the best place to find witnesses who might have seen Duvall and Muckle getting in the car to leave that night.

76. So, [Appellant] said, the main focus of his investigation was to find people who had been at [the convenience store on the night of the incident].

77. Since [Appellant] knew his friend [Taylor] had been there, he testified he had his family looking for him[,] as well as others who testified at trial.

78. [Appellant] testified that his sister[,] who had moved back to Mount Union[,] bumped into [Taylor] during [the] Christmas [holiday season in] 2017.

79. [Appellant] said [his sister] told Taylor to check out the website that had questions for him.

80. [Taylor] followed the directions and[,] ultimately[,] produced the affidavit that is [Appellant's] Exhibit 3.

81. [Appellant] testified he never [knew Walker was] at [the convenience store on the evening of the incident] before receiving Taylor's affidavit.

PCRA Court Opinion, 12/6/22, at 10-15 (extraneous capitalization and record citations omitted).

Here, Appellant argues that until Taylor came forward and identified his "cousin," who he met at a convenience store on the evening of the incident, as Walker, Appellant could not have known that Walker was the "cousin" "identified in the [police investigatory notes detailing an interview with McCracken] (which he did not have access to during trial) and [] who Taylor vaguely referred to in passing at trial." Appellant's Brief at 37. Appellant asserts that Taylor's affidavit identifying his "cousin" as Walker, led Appellant to the discovery of Walker and offered Appellant his first opportunity to obtain an affidavit from Walker. *Id.* at 35, 37-38. Appellant contends that Walker's affidavit constitutes a newly-discovered fact, namely a witness who could testify that Appellant "was not present [in] Muckle's apartment or [at] the [convenience store on the evening of the incident] as claimed by Muckle, Duvall, and [Duvall's sister] at trial." *Id.* at 35.

To invoke the newly-discovered facts exception, a petitioner must plead and prove facts that were unknown to the petitioner despite the exercise of due diligence. *Reid*, 235 A.3d at 1144, *citing* 42 Pa.C.S.A. § 9545(b)(1)(ii). "Due diligence does not require perfect vigilance and punctilious care, but merely a showing the party [] put forth reasonable effort to obtain the information upon which a claim is based." *Commonwealth v. Cox*, 146 A.3d 221, 230 (Pa. 2016) (citation and original quotation marks omitted). The petitioner must offer "evidence that he exercised due diligence in obtaining facts upon which his claim was based." *Id.* at 227, *citing Commonwealth v. Breakiron*, 781 A.2d 94, 98 (Pa. 2001). The question of whether a petitioner, based upon the circumstances of a particular case, would have been unable to discover the newly-discovered fact notwithstanding the exercise of due diligence is a question that requires fact-finding, and the PCRA court, as the fact-finder, should determine whether a petitioner demonstrated this requirement of the exception. *Commonwealth v. Bennet*, 930 A.2d 1264, 1274 (Pa. 2007).

"[T]he newly[-]discovered fact[s] exception[, however,] does not require any merits analysis of the underlying claim, and application of the time-bar exception[,] therefore[,] does not necessitate proof of the elements of a claim of after-discovered evidence." *Commonwealth v. Small*, 238 A.3d 1267, 1286 (Pa. 2020) (original quotation marks omitted) (noting that, the newly-discovered facts exception to the jurisdictional time-bar is distinct from an after-discovered evidence claim, which is a substantive basis for relief

- 22 -

pursuant to 42 Pa.C.S.A. § 9543(a)(2)(iv)); *see also Commonwealth v.*

*Fears*, 250 A.3d 1180, 1189 (Pa. 2021) (stating, an analysis pertaining to

whether a petitioner has sufficiently pleaded and proven the newly-discovered

facts exception to the jurisdictional time-bar prohibits a merits analysis of the

underlying claim). For purposes of the newly-discovered facts exception, a

determination that the facts were unknown to the petitioner is

circumstance-dependent and requires an analysis of the petitioner's

knowledge. *Small*, 238 A.3d at 1283.

In concluding that Walker's affidavit did not validly invoke the

newly-discovered facts exception to the jurisdictional time-bar, the PCRA court

stated,

> [Appellant] argues that the testimony of [Walker] at the PCRA
> [evidentiary] hearing fulfills the two evidentiary burdens he must
> satisfy [to invoke the newly-discovered facts exception, and,
> ultimately,] in order to obtain relief on [his after-discovered
> evidence claim.[15]]

---

[15] To receive a new trial based on after-discovered evidence, a petitioner (or
a defendant, depending upon the procedural posture of the case) must satisfy
a four-part test requiring:

> the petitioner [(or defendant)] to demonstrate the
> [after-discovered] evidence: (1) could not have been obtained
> prior to the conclusion of the trial by the exercise of reasonable
> diligence; (2) is not merely corroborative or cumulative; (3) will
> not be used solely to impeach the credibility of a witness; and (4)
> would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018), *citing*
*Commonwealth v. Pagan*, 950 A.2d 270 (Pa. 2008), *cert. denied*, 555 U.S.

- 23 -

First, he posits that the claim is timely[, pursuant to the newly-discovered facts exception,] since he did not know that his longtime friend [Walker] had been at [at the convenience store] on April 17, 2000[,] until he received [Taylor's] affidavit[.]

. . .

The question then is did [Appellant] satisfactorily explain why the newly[-]discovered fact[] could not have been discovered earlier. [Appellant] knew [Taylor] had been in the [convenience store] parking lot that evening. [Taylor] knew [Walker] had been there as well. [Walker] knew he had been briefly in [Muckle's] apartment. The three [individuals] grew up together. They were close friends. [Appellant's] family knew them. And yet, it was a chance meeting in 2017[,] in a local bar[,] between Taylor and [Appellant's] sister, that led to [Appellant's] learning of Walker's presence in the parking lot [of the convenience store] and [Muckle's] apartment. We note that when [Appellant] learned from [Taylor's] affidavit about [Walker] he had no difficulty getting an address for [Walker] and writing him a letter. On this point, we point out that Taylor's girlfriend[, McCracken,] testified at trial and gave the address in Huntingdon [County] where she, [Taylor,] and their [child] lived.

Our conclusion is that [Appellant] did not satisfactorily explain at [the PCRA evidentiary] hearing why the newly[-]discovered fact[] could not have been discovered earlier.

PCRA Court Opinion, 12/6/22, at 15-16.

Inherent in an analysis of whether a petitioner has pleaded and proven the newly-discovered facts exception, is first a determination of whether "the

_____

1198 (2009).

It is common for a petitioner seeking relief based upon a claim of after-discovered evidence to rely on the same evidence or facts to invoke the newly-discovered facts exception when the PCRA petition is filed more than one year after final judgment. *Cox*, 146 A.3d at 229. Here, Appellant relies on Walker's affidavit to invoke the newly-discovered facts exception, as well as to establish his claim for relief based upon after-discovered evidence.

facts upon which [the petitioner's] claim is predicated," are new facts that were unknown to the petitioner and could not have been ascertained through due diligence. **See** 42 Pa.C.S.A. § 9545(b)(1)(ii). Here, Appellant's claim that he is innocent and entitled to a new trial rests upon **the fact** that he was not present during the invasion of the house containing the guns and cross-bow and later at the hunting cabin where a murder took place. Appellant asked the PCRA court to infer this fact from newly-gathered locational information, including PCRA evidentiary hearing testimony and affidavits from previously untapped sources, which purported to show that Appellant was not in the presence of the other accomplices, either in Muckle's apartment or at the convenience store on the evening of the incident. **See** Appellant's Brief at 35 (stating, the after-discovered evidence of Walker's affidavit "demonstrate[s] that [Appellant] was not present at Muckle's apartment or [at the convenience store on the night of the incident]"). Appellant insists that Walker's affidavit and PCRA evidentiary hearing testimony, which suggested that Appellant was not present at Muckle's apartment or the convenience store on the evening of the incident, are new "facts" that trigger the timeliness exception under Section 9545(b)(1)(ii). **Id.** at 35-42. But this cannot be the case. Appellant's location on the evening of the incident, namely that he was not present at Muckle's apartment, the convenience store, the house with the guns and cross-bow, or the hunting cabin, has been a fact steadfastly maintained by Appellant throughout his legal journey and a fact that has always been known by Appellant. **See e.g.**, N.T., 5/15/06, at 65

(stating, at the evidentiary hearing on his first PCRA petition, that his *alibi* was that "I [(Appellant)] was at home" in York, Pennsylvania, on the evening of the incident); *see also* Appellant's Brief at 61 (stating, Appellant "has always maintained his innocence"). Moreover, Appellant's absence from Muckle's apartment and the convenience store has no independent probative value in this case other than to shed light on the likelihood that Appellant may, or may not, have joined the individuals from those locations to commit the crime proven at trial. Pennsylvania case law is unmistakably clear that only **new facts**, not newly-uncovered information pertinent to previously known facts, trigger the timeliness exception pursuant to Section 9545(b)(1)(ii).

Appellant's own whereabouts on the evening of the incident were always known to him, as it cannot seriously be asserted that Appellant did not know his physical location on the night in question. Appellant maintains that he was at home in York, Pennsylvania, on the evening of the incident and, therefore, could not have been present at, *inter alia*, Muckle's apartment and the convenience store in Mount Union. It follows, then, that Appellant has always known that he was **not** at Muckle's apartment and the convenience store in Mount Union on that night. Walker's affidavit, and subsequent testimony at the PCRA evidentiary hearing, do not constitute newly-discovered facts, for purpose of the newly-discovered facts exception pursuant to Section 9545(b)(1)(ii) but, rather, are newly-discovered or newly-willing **sources** that confirm or support a previously known fact, namely, as Appellant has consistently maintained, that he was not present in Mount Union on the

evening of the incident.[16] ***See Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008) (stating, "the focus of the exception is on the newly[-]discovered facts, not a newly[-]discovered or newly[-]willing source for previously known facts" (citation, original quotation marks, and original brackets omitted)); ***see also Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1267 (Pa. 2008) (holding that, affidavits, alleging two key Commonwealth witnesses perjured themselves at trial (a claim maintained by Abu-Jamal and, thus "known" to him), did not constitute newly-discovered facts, for purpose of the timeliness exception, because the only "new" fact was that two new witnesses provided affidavits and testimony to support the previously known fact of perjured testimony); ***Small***, 238 A.3d at 1287 (finding that, a co-defendant's testimony at a subsequent PCRA evidentiary hearing that was "materially consistent with his trial testimony" offered during Small's joint trial with co-defendant did not constitute an "unknown" fact for purpose of the newly-discovered facts exception but, rather, was a newly-discovered source of a previously known fact, namely the contents of the co-defendant's testimony). Therefore, we discern no error in the PCRA court's determination that Appellant failed to properly invoke the newly-discovered facts exception.

---

[16] The crux of Walker's affidavit, and PCRA evidentiary hearing testimony, was that Appellant was not at Muckle's apartment or at the convenience store on the evening of the incident. ***See*** Appellant's Exhibit 6; ***see also*** N.T., 1/5/22, at 124-125, 135, 140-141.

**After-Recognized Constitutional Right**

Appellant's next issue challenges the PCRA court's dismissal of his petition on the ground that he failed to invoke the after-recognized constitutional right exception pursuant to 42 Pa.C.S.A. § 9545(b)(1)(iii). Appellant's Brief at 60-66.  Appellant contends that the Supreme Court of the United States decision in **McCoy**, **supra**, "announced a new constitutional rule that warrants retroactive application." **Id.** at 62.  Appellant further asserts that the new constitutional rule announced in **McCoy** is a "substantive ruling" that "applies retroactively despite the Supreme Court [of the United States] not uttering the magic words concerning retroactivity." **Id.** at 64-65. Appellant argues that "where the ruling is a new constitutional rule and [is a] substantive [rule], the Supreme Court [of the United States] need not explicitly state that the ruling applies retroactively to cases on collateral review for the holding in the case to so apply." **Id.** at 65-66 (asserting, "where a new constitutional rule is substantive, a state court must give it retroactive effect").

To invoke the after-recognized constitutional right exception pursuant to Section 9545(b)(1)(iii), a petitioner must plead and prove that (1) "the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or [our Supreme Court] after the time provided in [Section 9545]"; and (2) "the right has been held by that court to apply retroactively." **Reid**, 235 A.3d at 1154 (citation and original quotation marks omitted).  Importantly, the court announcing the new constitutional right must

have ruled that the right applied retroactively prior to the filing of a petition for collateral review. *Id.* at 1154, 1161 (stating that, by use of the words "has been held" and "that court" in Section 9545(b)(1)(iii), "the legislature clearly intended that the right was already recognized [as applicable with retroactive force] at the time the petition was filed"); *see also Commonwealth v. Washington*, 142 A.3d 810, 823 (Pa. 2016) (Dougherty, J. concurring) (stating, the "safety valve for vindication of new and retroactive rights is logically limited to pronouncements from the two courts of last resort that can recognize new rights and makes clear that the court of last resort announcing the new right should also issue the holding on the retroactivity of the new right"). In other words, to invoke the after-recognized constitutional right exception in the case *sub judice*, Appellant must establish that the Supreme Court of the United States announced a new constitutional right in *McCoy*, and that the Supreme Court of the United States held that the new constitutional right applied retroactively to cases on collateral appeal wherein the judgment became final before the new pronouncement.

In *McCoy*, the High Court held that "[t]he Sixth Amendment guarantees a defendant the right to choose the objective of his[, or her,] defense and to insist that his[, or her,] counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *McCoy*, 584 U.S. at 414, 417. The *McCoy* Court explained that, while a "lawyer's province is trial management," the defendant-client retains the right "to plead guilty, waive

the right to a jury trial, testify in one's own behalf, and forgo an appeal." ***Id.*** Within the category of rights reserved for the defendant-client is the "[a]utonomy to decide that the objective of the defense is to assert innocence[.]" ***Id.*** at 414-415, 422. "With individual liberty – and, in capital cases, life – at stake, it is the defendant's prerogative, not counsel's to decide on the objective of his[, or her,] defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his[, or her,] innocence, leaving it to the State to prove his[, or her,] guilt beyond a reasonable doubt." ***Id.*** at 417-418. "Thus, when a [defendant-]client makes it plain that the objective of 'his[, or her,] defence' is to maintain innocence of the charged criminal acts and pursue an acquittal, his[, or her,] lawyer must abide by that objective and may not override it by conceding guilt." ***Id.*** at 415, 423.

Here, Appellant asserts that ***McCoy*** announced a new constitutional rule pursuant to the Sixth Amendment of the United States Constitution.[17] Appellant's Brief at 60 (contending that, the new constitutional rule announced in ***McCoy*** implicates "a defendant's Sixth Amendment right to 'client autonomy'"). The Sixth Amendment of the United States Constitution guarantees that

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which

---

[17] Because Appellant does not assert a violation of his right to counsel as guaranteed by Article I, Section 9 of the Pennsylvania Constitution, we limit our analysis of Appellant's timeliness argument to the federal constitution.

district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and **to have the Assistance of Counsel for his defence**.

U.S. CONST. amend. VI (emphasis added).

In order to satisfy the after-recognized constitutional right under Section 9545(b)(1)(iii), Appellant, in the case *sub judice*, needed to demonstrate that the client-autonomy right discussed in *McCoy* was (1) a new constitutional right, and (2) that the Supreme Court of the United States, in reaching its conclusion, held that the new constitutional right was to be applied retrospectively. 42 Pa.C.S.A. § 9545(b)(1)(iii). Although Appellant asserts that the *McCoy* Court "held **for the first time** that defendants have the right to insist that counsel refrain from admitting guilt," (**see** Appellant's Brief at 60 (emphasis added)), we cannot agree with Appellant's assertion. Rather, defendants, such as Appellant, have enjoyed the right to, *inter alia*, assistance of counsel since the ratification of the United States Bill of Rights in 1791, as made appliable to states through the ratification of the Fourteenth Amendment in 1868. Instead of expanding the list of rights enumerated in the Sixth Amendment, the *McCoy* Court refined and further defined the roles of counsel and a defendant-client within the context of the Sixth Amendment, thereby clarifying the concept of client-autonomy. Embodied within the Sixth Amendment is the fundamental right that "a defendant must be allowed to make his[, or her,] own choices about the proper way to protect his[, or her,]

own liberty." *See McCoy*, 584 U.S. at 427. As such, the right to client-autonomy has existed since the inception of the Sixth Amendment.

As further support that *McCoy* did not announce a new constitutional right is the fact that the High Court began its discussion by noting it previously held, in *Florida v. Nixon*, 543 U.S. 175 (2004), that when a defendant-client is informed by counsel of a proposed guilt-phase concession strategy believed to be in the best interest of the defendant-client and the defendant-client neither consents nor objects, counsel may proceed with the strategy without fear of committing *per se* ineffectiveness. *Nixon*, 543 U.S. at 178-179 (stating that, "certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate"). Thus, in 2004, when the *Nixon* decision was handed down, the High Court already recognized the right of client-autonomy embodied within the Sixth Amendment. Therefore, *McCoy* did not announce a new constitutional right, as required to establish the after-recognized constitutional right exception to the PCRA jurisdictional time-bar. *See Commonwealth v. Gonzalez*, 242 A.3d 416, 2020 WL 6707033, at *4 (Pa. Super. filed Nov. 16, 2020) (non-precedential decision) (stating, "[a] defendant's 'secured autonomy' under the Sixth Amendment is not a 'new' constitutional right[;] *McCoy* simply applied a defendant's well-rooted Sixth Amendment right to autonomy to a new set of circumstances" (citation omitted)); *appeal denied*, 253 A.3d 222 (Pa. 2021), *cert. denied*, 142 S.Ct. 498 (2021); *see also Commonwealth v. Furman*, 258 A.3d 557, 2021 WL 2662280, at *4

(Pa. Super. filed Jun. 29, 2021) (non-precedential decision) (stating, **McCoy** "does not create a new constitutional right"); **Commonwealth v. Weiss**, 81 A.3d 767, 798 (Pa. 2013) (recognizing that, "only a criminal defendant has the authority to concede criminal liability").[18]

Moreover, assuming, *arguendo*, that **McCoy** did announce a new constitutional right, which it did not, Appellant fails to establish that the Supreme Court of the United States expressly recognized that the decision applied retroactively on collateral review. **See** 42 Pa.C.S.A. § 9545(b)(1)(iii); **see also** Appellant's Brief at 62 (conceding that, the rule announced in **McCoy** merely "warrants retroactive application"). Instead, Appellant asserts that "**McCoy** announced a substantive rule" and, as such, the Supreme Court of the United States did not need to "explicitly state that the ruling applies retroactively to cases on collateral review for the holding in the case to so apply." Appellant's Brief at 65-67. We cannot agree that **McCoy** announced a "substantive rule."

"[S]ubstantive rules are those that decriminalize conduct or prohibit punishment against a class of persons." **Washington**, 142 A.3d at 813; **see**

---

[18] Moreover, our research has not revealed, nor has Appellant cited to, any federal case declaring that **McCoy** announced a new constitutional right. **See** Appellant's Brief at 63 *citing* **Smith v. Stein**, 982 F.3d 229, 233 (4th Cir. 2020), *cert. denied*, 141 S.Ct. 2532 (2021). Our review of **Smith** reveals that the Fourth Circuit Court of Appeals declined to resolve the issue of whether **McCoy** announced a new constitutional right because, regardless, the decision announced in **McCoy** does not retroactively apply on collateral review. **Smith**, 982 F.3d at 234-235.

***also Reid***, 235 A.3d at 1162 (defining "substantive rules" as "rules forbidding criminal punishment of certain primary conduct, as well as rules prohibiting a certain category of punishment for a class of defendants because of their status or offense").  Conversely, "rules that regulate only the manner of determining the defendant's culpability are procedural."  ***Washington***, 142 A.3d at 813 (citation omitted); ***see also Reid***, 235 A.3d at 1162 (defining "procedural rules" as rules "designed to enhance the accuracy of a conviction or sentence by regulating the manner of determining the defendant's culpability" (citation and original quotation marks omitted)).  "Procedural rules" "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise."  ***Reid***, 235 A.3d at 1162 (citation omitted).

> When a decision of the Supreme Court of the United States results in a "new rule," that rule applies to all criminal cases still pending on direct review.  However, "under [***Teague v. Lane***, 489 U.S. 288 (1989)], a new constitutional rule of criminal procedure does not apply, as a general matter, to convictions that were final when the new rule was announced.  There are, however, "two categories of rules" that are exempt from ***Teague***'s "general retroactivity bar," which a defendant may invoke notwithstanding the finality of his or her judgment of sentence.  First, new substantive rules generally apply retroactively.[19]  Second, a much narrower class

---

[19] Although our Supreme Court characterized "new substantive rules" as forming an exception to the general retroactivity bar, the Supreme Court of the United States recognizes that "substantive rules are more accurately characterized as not subject to the bar."  ***Montgomery v. Louisiana***, 577 U.S. 190, 198 (2016) (citation, original quotation marks, and ellipsis omitted).

of "watershed rules of criminal procedure" also apply retroactively. The High Court has described such "watershed" rules as those that implicate the fundamental fairness and accuracy of the criminal proceeding.[20]

**Commonwealth v. Olson**, 218 A.3d 863, 868 (Pa. 2019) (citations, original brackets, and some original quotation marks omitted), *cert. denied*, 141 S.Ct. 87 (2020).

Recently, the Supreme Court of the United States, in discussing the "watershed exception" reiterated that the exception was narrowly tailored from its inception and that the High Court in **Teague**, **supra**, "stated that it was 'unlikely' that additional watershed rules would 'emerge.'" **Edwards v. Vannoy**, 141 S.Ct. 1547, 1557 (2021). Since the pronouncement of the "watershed exception" in **Teague**, **supra**, the Supreme Court of the United States has never found a new "watershed" rule of criminal procedure.[21] **Id.**

_____

[20] A "watershed rule of criminal procedure" is a rule "without which the likelihood of an accurate conviction is **seriously** diminished." **Schriro v. Summerlin**, 542 U.S. 348, 352 (2004) (citation omitted; emphasis in original); **see also Teague**, 489 U.S. at 307 (stating, a "watershed rule" is a rule that "requires the observance of those [criminal] procedures that are implicit in the concept of ordered liberty" (citation, original quotation marks, and ellipsis omitted)). To qualify as a "watershed rule," "a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding." **Whorton v. Bockting**, 549 U.S. 406, 420 (2007) (citations and original quotation marks omitted).

[21] "As to watershed rules, to date, the Supreme Court of the United States has discerned only one, arising out of the sweeping changes to the criminal justice system brought about by the conferral of the right to counsel upon indigent defendants charged with felonies in **Gideon v. Wainwright**, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)." **Washington**, 142 A.3d at 813; **see also Edwards**, 141 S.Ct. at 1557 (stating, the High Court "has identified only

Rather, the **Edwards** Court described the "watershed exception" as a "theoretical exception that never actually applies in practice[,] offer[ing] false hope to defendants, distort[ing] the law, mislead[ing] judges, and wast[ing] the resources of defense counsel, prosecutors, and courts." **Id.** at 1560. As such, the **Edwards** Court stated that the "watershed exception is moribund [and] must be regarded as retaining no vitality." **Id.** In other words, "no new rules of criminal procedure can satisfy the watershed exception." **Id.** at 1559.

In the case *sub judice*, assuming *arguendo* that **McCoy** announced a new constitutional rule, that rule – recognizing a defendant's right to choose the objective of his or her defense and to insist that his or her counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty – is not a substantive rule. On its face, the **McCoy** rule neither decriminalizes certain actions nor prohibits punishment against a certain class of people. Rather, the **McCoy** rule pertains to the manner in which a defendant's culpability is determined – *i.e.*, counsel cannot concede guilt

_____

one pre-**Teague** procedural rule as watershed: the right to counsel recognized in the Court's landmark decision in **Gideon**[, **supra**.]").

The High Court in **Gideon**, **supra**, held that the right to assistance of counsel, enumerated in the Sixth Amendment of the federal constitution, and made applicable to the states by virtue of the Fourteenth Amendment, requires the appointment of counsel for indigent defendants who are being subject to criminal prosecution by the state. **Gideon**, 372 U.S. at 342-345.

when a defendant objects to counsel's strategy. Therefore, the rule announced in **McCoy** is a "procedural rule."

Assuming further, for purpose of discussion, that **McCoy** set forth a new rule (or concept) of criminal procedure, the pronouncement in **Edwards**, **supra**, precludes a determination that the rule constitutes a "watershed rule" that applies retroactively. As such, the rule announced in **McCoy** cannot be held, on the strength of its own significance, to apply retroactively on collateral review where the judgment of sentence has become final. **See Edwards**, 141 S.Ct. at 1560; **see also Gonzalez**, 242 A.3d 416, 2020 WL 6707033, at *5 (holding that, the rule announced in **McCoy** does not apply retroactively on collateral review); **Commonwealth v. Strum**, 270 A.3d 1129, 2021 WL 5829783, at *3 (Pa. Super. filed Dec. 9, 2021) (non-precedential decision) (recognizing that, neither the Supreme Court of the United States nor our Supreme Court "has held the **McCoy** decision applies retroactively to cases on collateral review").

Therefore, we discern no error in the PCRA court's determination that Appellant failed to invoke the after-recognized constitutional right exception to the jurisdictional time-bar.

### Initial-PCRA Counsel Ineffectiveness Claim

In his fifth issue, Appellant challenges the PCRA court's order dismissing his petition on the ground that initial-PCRA counsel, who represented Appellant on his first PCRA petition filed in March 2005, was ineffective for failing to assert a violation of Appellant's client-autonomy right during

collateral review. Appellant's Brief at 66-70. Appellant contends that, if the decision in *McCoy* does not constitute a newly-recognized constitutional right (in other words, the right to client-autonomy existed pre-*McCoy*), then initial-PCRA counsel failed to raise trial counsel's violation of Appellant's constitutional right to the assistance of counsel in his 2005 PCRA petition. *Id.* Appellant contends that initial-PCRA counsel "couched [the *McCoy*] claim in terms of ineffective assistance of [trial] counsel." *Id.* at 67. Appellant argues that initial-PCRA counsel should have "converted" the ineffectiveness of trial counsel claim Appellant raised in his 2005 *pro se* PCRA petition into a violation of Appellant's constitutional rights claim (*vis-à-vis* a claim asserting a violation of client-autonomy) pursuant to *McCoy*. *Id.* at 68. If initial-PCRA counsel had raised the *McCoy* claim solely as a violation of constitutional rights claim, Appellant contends "there is a reasonable probability that, but for the error, the outcome of the [2005] PCRA proceedings would have been different." *Id.* at 67.

In the instant PCRA petition, Appellant couches his *McCoy* claim within the confines of an initial-PCRA counsel ineffectiveness claim in an attempt to circumvent the PCRA jurisdictional time-bar. Although Appellant does not cite to a specific Section 9545(b)(1) exception, Appellant's assertion (that initial-PCRA counsel "effectively abandoned [Appellant] during [his] initial PCRA appeal [by asserting only] a waived claim") strikes us as an attempt to

invoke the newly-discovered facts exception pursuant to Section 9545(b)(1)(ii).[22] ***See id.*** at 69.

It is well-established that an allegation of ineffectiveness is, typically, not sufficient to overcome an otherwise untimely PCRA petition. ***Commonwealth v. Gamboa-Taylor***, 753 A.2d 780, 785 (Pa. 2000) (holding that, an ineffective assistance of PCRA counsel claim layered on top of a claim involving trial counsel's ineffectiveness does not satisfy the newly-discovered facts exception to the PCRA jurisdictional time-bar); ***see also Commonwealth v. Robinson***, 139 A.3d 178, 186 (Pa. 2016) (stating that, couching a petitioner's claim in terms of ineffectiveness will not save an

---

[22] Section 9545(b)(1)(i) provides a timeliness exception when a petitioner establishes that "the failure to raise the claim previously was the result of **interference by government officials** with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]" 42 Pa.C.S.A. § 9545(b)(1)(i) (emphasis added). Our Supreme Court previously stated that the term "government officials" for purposes of the Section 9545(b)(1)(i) timeliness exception does not include a defendant's (or petitioner's) counsel. ***Commonwealth v. Wharton***, 886 A.2d 1120, 1127 (Pa. 2005). Therefore, Appellant's claim asserting ineffectiveness of initial-PCRA counsel fails to invoke an exception under Section 9545(b)(1)(i).

Similarly, Appellant's ineffectiveness claim fails to invoke the after-recognized constitutional right exception pursuant to Section 9545(b)(1)(iii). Appellant does not cite to a recent decision by the Supreme Court of the United States or our Supreme Court (nor does our research reveal a decision) that sets forth, *inter alia*, a newly-recognized constitutional right to effective PCRA counsel, as is required to invoke the after-recognized constitutional right. Rather, it has long-been established that Appellant has a rule-based right to effective PCRA counsel.

otherwise untimely petition under any one of the three exceptions enumerated in Section 9545(b)(1)).

In **Bennett**, **supra**, our Supreme Court carved out a narrow exception to the decision announced in **Gamboa-Taylor**. The **Bennett** Court held that where a petitioner's allegation of PCRA counsel's ineffectiveness "emanates from the complete denial of counsel," Section 9545(b)(1)(ii) permits that claim to be considered on its merits despite the claim being raised in an untimely PCRA petition. **Bennet**, 930 A.2d at 1273 (stating that, "the analysis set forth in **Gamboa–Taylor** and subsequent case law does not apply to situations when counsel abandons his[, or her,] client for purposes of appeal"). Several years later, our Supreme Court clarified its holding in **Bennett**, **supra**, stating that nothing in **Bennett** or Section 9545(b)(1)(ii) supports a conclusion that a claim of PCRA counsel ineffectiveness based upon allegations of abandonment presumptively or automatically overcomes the PCRA jurisdictional time-bar. **Commonwealth v. Watts**, 23 A.3d 980, 986 (Pa. 2011). Rather, in order to qualify for the newly-discovered facts exception, a petitioner's "fact" of PCRA counsel's ineffectiveness based upon abandonment must have been unknown to the petitioner and could not have been discovered through the exercise of due diligence. **Id.** Additionally, the petitioner must still file his or her petition invoking the newly-discovered facts exception based

on a claim of PCRA counsel abandonment within one year of discovery.[23]  42

Pa.C.S.A. § 9545(b)(2).

In determining whether PCRA counsel "completely abandoned" a petitioner, our Supreme Court has explained that abandonment occurs when counsel's actions or inactions have "completely foreclosed [a petitioner] from obtaining review of the collateral claims set forth in his[, or her,] PCRA petition."  ***Commonwealth v. Parrish***, 224 A.3d 682, 696 (Pa. 2020) (citation, original brackets, and original quotation marks omitted); ***see also Commonwealth v. Rosado***, 150 A.3d 425, 431 (Pa. 2016).  For example, in ***Commonwealth v. Peterson***, 192 A.3d 1123 (Pa. 2018), our Supreme Court held that PCRA counsel's untimely filing of Peterson's first PCRA petition "constituted ineffectiveness *per se* [(or abandonment)] as it completely foreclosed Peterson from obtaining review of the collateral claims set forth in his first PCRA petition."  ***Peterson***, 192 A.3d at 1132 (stating that, Peterson

_____

[23] Our Supreme Court in ***Bradley***, ***supra***, held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal."  ***Bradley***, 261 A.3d at 401.  While the new rule of law set forth in ***Bradley***, ***supra***, permits a PCRA petitioner to raise an ineffectiveness claim involving original-PCRA counsel at the first opportunity to do so, **even if on collateral appeal**, ***Bradley*** does not permit a petitioner to raise a claim of PCRA counsel ineffectiveness in an untimely subsequent or serial PCRA petition pursuant to the newly-discovered facts exception or in a collateral appeal of that subsequent or serial PCRA petition.  ***See id.*** at 406 (Dougherty, J. concurring).  In other words, ***Bradley*** did not announce a rule that allows a petitioner to circumvent the PCRA jurisdictional time-bar.

properly invoked the newly-discovered facts exception based upon abandonment).

In the case *sub judice*, Appellant asserts that initial-PCRA counsel "should have converted [Appellant's] claim in his [2005 *pro se*] PCRA petition[, asserting] that [trial counsel] was ineffective in conceding [Appellant's] guilt without authorization[,] into a client-autonomy claim." Appellant's Brief at 68. In so asserting, Appellant claims that his initial-PCRA counsel was ineffective for failing to raise a client-autonomy claim in the amended petition filed on August 15, 2006.

A review of the record demonstrates that initial-PCRA counsel filed an amended first PCRA petition in August 2006, that, in addition to incorporating the 19 issues raised by Appellant in his *pro se* PCRA petition filed in March 2005, raised two more ineffective assistance of trial counsel claims. Amendment to *Pro Se* PCRA Petition, 8/15/06, at ¶3; **see also Branthafer**, 64 A.3d 35, 2012 WL 7831640, 1878 MDA 2011, at 3 (stating, initial-PCRA counsel "filed an amended petition adding [two] issues to the 19 issues raised by [Appellant]"). Thereafter, Appellant was permitted to represent himself before the PCRA court, and initial-PCRA counsel remained as stand-by counsel. Ultimately, the PCRA court denied Appellant's petition.

While Appellant's 2005 petition may not have included a client-autonomy claim, initial-PCRA counsel's action – failure to include a client-autonomy claim – did not completely foreclose Appellant's collateral review by the PCRA court but, rather, simply narrowed the claims presented

to the PCRA court. As such, initial-PCRA counsel did not completely abandon Appellant.[24] Therefore, the narrow exception set forth in **Bennett**, **supra**, is of no avail, and the rule of law set forth in **Gamboa-Taylor** applies in the case *sub judice*. Consequently, Appellant's claim of ineffectiveness involving initial-PCRA counsel does not overcome the jurisdictional time-bar.[25]

## Conclusion

In sum, we discern no error of law or abuse of discretion in the dismissal of Appellant's PCRA petition. Appellant's petition was patently untimely and did not validly invoke one of the enumerated exceptions to the PCRA jurisdictional one-year time-bar. Therefore, the PCRA court was without

_____

[24] Because initial-PCRA counsel did not completely abandon Appellant in the filing of an amended PCRA petition, Appellant's assertion that initial-PCRA counsel was ineffective for failing to "convert" a claim of trial counsel ineffectiveness into a violation of a constitutional right claim would be analyzed under the three-prong performance-prejudice test pursuant to **Strickland**, **supra**.

[25] Assuming *arguendo*, that initial-PCRA counsel's failure to include a client-autonomy claim in the first PCRA petition constituted complete abandonment, Appellant would still be required to invoke an exception to the PCRA jurisdictional time-bar. Namely, Appellant would be required to demonstrate that this "fact" of abandonment was unknown and could not be discovered through the exercise of due diligence.

Here, after initial-PCRA counsel filed the amended PCRA petition, Appellant was granted permission to proceed *pro se*. As such, Appellant, at this point, would have become aware of or known that a claim of client-autonomy was not included in the 21 claims presented to the PCRA court. As Appellant's instant PCRA petition was filed more than one year after the "discovery" of this "fact," Appellant would be unable to invoke an exception to the jurisdictional time-bar.

jurisdiction to address the underlying claims raised by Appellant, and this Court is without jurisdiction to address those claims on appeal.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 04/05/2024