J-S33039-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                              :          PENNSYLVANIA
                              :
            v.                :
                              :
                              :
PATRICIA LYNNE RORRER         :
                              :
            Appellant         :   No. 1888 EDA 2024

Appeal from the PCRA Order Entered July 5, 2024
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002176-1997

BEFORE: BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                 **FILED DECEMBER 22, 2025**

Patricia Lynne Rorrer ("Rorrer") appeals from the order entered by the Lehigh County Court of Common Pleas denying her petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Because Rorrer's petition was untimely filed and she failed to establish an exception to the statutory time-bar, we affirm.

This Court previously set forth the lengthy factual and procedural history in this case:

> [Rorrer] is the former girlfriend of Andrew Katrinak [("Katrinak")]. On December 12, 1994, [Rorrer] telephoned the Katrinak residence, where Andrew lived with his wife, Joann, and their infant son, Alex. Joann told [Rorrer] never to call there again. Three days later, Joann and the baby disappeared. Their bodies were discovered in a wooded area where [Rorrer] once stabled and rode her horses. The results of an autopsy established

---

[1] 42 Pa.C.S. §§ 9541-9546.

that Joann had been beaten and shot in the face with a .22 caliber handgun. The cause of death of the baby could not be determined conclusively. His death was the result of either suffocation or exposure to the elements. Following an extensive two-year police investigation, [Rorrer] was arrested at her home in North Carolina and charged with kidnapping and murder. Notably, the police investigation included DNA testing of hairs found at the crime scene on the back of the headrest of the driver's seat (hereinafter referred to as "the seatback hairs"). Testing results indicated that [Rorrer] could not be excluded as a contributor to the seatback hairs.

On March 9, 1998, a jury found [Rorrer] guilty of two counts each of first-degree murder and kidnapping. [Rorrer] was sentenced to two terms of life imprisonment on the first-degree murder charges, followed by two consecutive ten-to-twenty-year terms of imprisonment for the kidnapping convictions. [Rorrer] filed a post-sentence motion, asserting 105 claims of ineffective assistance of trial counsel and numerous claims of trial court error. The trial court held multiple hearings, denied the motions, and authored an opinion addressing all of the issues. On direct appeal, [Rorrer] presented four ineffectiveness claims, which we rejected. [*See Commonwealth v. Rorrer*, 748 A.2d 776 (Pa. Super. 1999) (non-precedential decision)]. Our Supreme Court also denied her petition for allocatur on April 11, 2000. [*Commonwealth v. Rorrer*, 757 A.2d 931 (Pa. 2000).].

[Rorrer] filed a timely PCRA petition, which was denied. On appeal, [Rorrer] averred that direct appeal counsel was ineffective for not pursuing all 105 claims of trial counsel's ineffectiveness that were included in the post-sentence motion. We rejected that argument and affirmed the denial of PCRA relief. *See Commonwealth v. Rorrer*, 844 A.2d 1288 (Pa. Super. 2003) [] [non-precedential decision].

On June 27, 2005, [Rorrer] filed a petition pursuant to 42 Pa.C.S. § 9543.1 …. [Rorrer] argued that further DNA testing, using the more reliable DNA technologies now available, would exonerate her of the murders. A hearing on the DNA testing claim was held, at which both sides agreed that the recovered seatback hairs belonged to the killer and that the chain of custody of those hairs was not in question since they were mounted right after they were found.

The [PCRA] court entered an order compelling the Commonwealth to preserve the seatback hairs and other items, and authorized a DNA expert to review the DNA testing conducted prior to trial. The expert was to determine if new DNA testing procedures now existed which could yield more accurate results. The court also gave notice of its intent to dismiss all allegations pertaining to the chain of custody of the hair samples. The items were sent for inspection to [Rorrer's] choice of lab, Orchid Cellmark, and in October of 2007, the Commonwealth agreed to allow nuclear DNA testing of a fingernail fragment, the seatback hairs, and a cigarette butt. Test results of one of the seatback hairs revealed that it belonged to [Rorrer]. The laboratory was unable to recover material from the fingernail that could be tested, and no other items were DNA tested. [Rorrer] requested mitochondrial DNA testing on the fingernail, which the Commonwealth opposed and the court denied.

After the DNA results were admitted into evidence, defense counsel renewed the chain of custody issue, arguing that the Commonwealth failed to establish a reliable chain of custody for the seatback hairs tested by Orchard Cellmark. The Commonwealth countered that the chain of custody issue had already been dismissed by the court's order of March 15, 2007, based on the stipulation of the parties. Moreover, the Commonwealth contended that it offered evidence at trial that established a reliable chain of custody as to the forensic items.

While the DNA petition was still being litigated, [Rorrer] filed a second PCRA petition claiming that the Commonwealth intentionally withheld exculpatory evidence consisting of a statement that Walter Traupman gave to police. Since Mr. Traupman's original statement was not available, the PCRA court allowed Mr. Traupman to be deposed …. The PCRA court denied [Rorrer's] petition, concluding that Mr. Traupman's deposition did not warrant the grant of a new trial in light of the DNA evidence against [Rorrer]. [Rorrer] did not file an appeal.

On August 24, 2012, [Rorrer] filed her third PCRA petition. In this petition, she asserted entitlement to additional DNA testing of the fingernail fragment as on the basis that she had just discovered that the Commonwealth had tampered with it. [Rorrer], who was thirty-three years old when she committed the murders, also asserted that she was entitled to relief under *Miller v. Alabama*, 567 U.S. 460 (2012) (holding "that mandatory life

without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"). The PCRA court denied relief and on appeal, we affirmed. **Commonwealth v. Rorrer**, 93 A.3d 508 (Pa. Super. 2013) [] [non-precedential decision], *appeal denied*, 92 A.3d 811 (Pa. 2014).

On September 24, 2015, [Rorrer] filed her fourth PCRA petition with the assistance of counsel. In this petition, [Rorrer] alleged that the hair analysis testimony offered at her 1998 trial was unreliable and would be inadmissible under current professional standards; that the Pennsylvania State Police deliberately placed her exemplar hairs on the slides that were sent to the FBI and then, post-conviction, to an independent lab for DNA testing; that she had after-discovered evidence in the form of Catasauqua Police Officer Joseph Kicska, who was one of the responders to [] Katrinak's home after Joann was reported missing, and who told Joseph York that he lied at trial when he said that an exterior door to the victim's home was pried open; and that the Commonwealth withheld exculpatory evidence when it failed to provide her with the statements that Mr. Trau[p]man made to police …. [T]he PCRA court dismissed [the petition] as untimely.

On appeal, we affirmed the dismissal of [Rorrer's] fourth PCRA petition, finding that the record categorically belied [Rorrer's] arguments. **Commonwealth v. Rorrer**, [2017 WL 4861621 (Pa. Super. Oct. 26, 2017) non-precedential decision]. [] [W]e found that [Rorrer's] claim that her exemplar hairs were switched for the seatback hairs had been previously litigated in her third PCRA petition …. Following our decision, [Rorrer] filed a petition for allowance of appeal in the Supreme Court, which was denied. **Commonwealth v. Rorrer**, [185 A.3d 965] (Pa. 2018).

While [Rorrer's] petition for allocatur was pending, [she] filed a fifth petition for PCRA relief citing newly-discovered evidence …. [A]fter issuing a Pa.R.Crim.P. 907 notice and after the Supreme Court denied allocatur on the fourth PCRA petition, the PCRA court dismissed [Rorrer's] fifth PCRA petition.

*Commonwealth v. Rorrer*, 2020 WL 194926, at \*\*1-3 (Pa. Super. 2020) (non-precedential decision) (citation omitted). This Court affirmed the dismissal. *Id.* at \*6.

In the interim, on April 2, 2019, Rorrer filed a pro se habeas corpus petition in the United States District Court for the Eastern District of Pennsylvania. The federal magistrate stayed the petition pending the resolution of Rorrer's state appeals. After the court lifted the stay, Rorrer sought limited discovery, including all Pennsylvania State Police records documenting the chain of custody of the seatback hairs, and any documents, records, photographs, and reports relating to the DNA analysis by the FBI. The federal magistrate granted Rorrer's motion. *See Rorrer v. Nicholas*, 2021 WL 4963657 (E.D. Pa. 2021) (memorandum opinion).

On January 18, 2023, Rorrer filed the instant PCRA petition pro se. Subsequently, through privately-retained counsel, Rorrer filed an amended PCRA petition and habeas corpus petition. In the amended PCRA petition, Rorrer invoked the newly-discovered facts timeliness exception, arguing that she discovered handwritten laboratory notes from Dr. Joseph DiZinno, a special agent with the FBI assigned to the FBI laboratory at the time of trial, that were never disclosed and stated that the seatback hairs were not artificially treated (i.e., bleached or dyed) but that Rorrer's hair sample was artificially treated. Citing *Brady v. Maryland*, 373 U.S. 83 (1963), Rorrer asserted that Dr. DiZinno's notes were material and exculpatory. According

- 5 -

to Rorrer, she only discovered the notes in February 2022 after the federal magistrate granted her motion seeking discovery from the Lehigh County District Attorney's Office.

The PCRA court held a hearing on the petition on November 6, 2023. At the hearing, Rorrer's trial counsel, the assistant district attorney who prosecuted the case, and Dr. DiZinno testified. Trial counsel testified that he did not have Dr. DiZinno's notes regarding the fact that Rorrer's hair was artificially treated and stated he would have cross-examined Dr. DiZinno on these notes had he been provided them. Dr. DiZinno testified about five pages of his notes, dated August 21, 1996, which described the seatback hairs as not artificially treated and that Rorrer's hair was artificially treated. Additionally, Dr. DiZinno stated that the fact seatback hairs were not artificially treated and Rorrer's hair samples were treated had no bearing on the DNA results. Before any decision was rendered, the PCRA court judge was transferred to a new division and a new PCRA court judge was assigned to this case.

On June 17, 2024, the PCRA court issued a notice of intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Rorrer filed a response to the notice. On July 5, 2024, the PCRA court denied Rorrer's amended PCRA petition and habeas corpus petition. Rorrer filed a timely notice of appeal. Subsequently, Rorrer's PCRA counsel withdrew from

representation and Rorrer sought the appointment of new counsel to represent her on appeal, which the PCRA court granted.

Rorrer raises the following questions for our review:

1. Where there were newly discovered facts reflecting that the most critical Commonwealth DNA evidence was flawed, did the [PCRA] [c]ourt err in not granting a new trial on this **Brady** claim?

2. Where the newly discovered facts reflect that the most critical DNA evidence presented at trial by the Commonwealth was flawed, did the [PCRA] [c]ourt err in not granting a new trial based on this new evidence under 42 Pa.C.S. § 9543(a)(1)(vi)?

3. Where there have been multiple exculpatory/impeaching facts uncovered over the past three decades, should they be viewed collectively as **Kyles v. Whitley**, 514 U.S. 419, 434 (1995), instructs?

4. Where counsel in the court below failed to raise significant aspects of **Brady** and newly discovered fact claims and trial counsel's ineffectiveness, and the [PCRA] court decided credibility issues on a cold record, should this matter be remanded for an evidentiary hearing if this Court does not reverse [Rorrer's] conviction?

Rorrer's Brief at 2 (issues reordered).

Before we assess the merits of Rorrer's claims, we must answer the threshold question of whether the petition was filed timely or, alternatively, whether she satisfies an exception to the statutory time bar. **See Commonwealth v. Brown**, 141 A.3d 491, 499 (Pa. Super. 2016) ("Crucial to the determination of any PCRA appeal is the timeliness of the underlying petition. Thus, we first must determine whether the instant PCRA petition was timely filed.") (quotation marks and citation omitted). "The timeliness

- 7 -

requirement for PCRA petitions is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition. ***Id.*** (quotation marks and citation omitted); ***see also Commonwealth v. Fantauzzi***, 275 A.3d at 994 (noting "the timeliness of a PCRA petition is jurisdictional and that if the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief"). The timeliness of a PCRA petition is a question of law for which our standard of review is de novo and our scope of review is plenary. ***Commonwealth v. Callahan***, 101 A.3d 118, 121 (Pa. Super. 2014).

The PCRA sets forth the following mandates governing the timeliness of any PCRA petition:

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that Court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Additionally, the petitioner must file a petition invoking one of the exceptions "within one year of the date the claim could have been presented." *Id.* § 9545(b)(2).

Rorrer's judgment of sentence became final on July 10, 2000, after the time to file a petition for a writ of certiorari to the United States Supreme Court. *See id.* § 9545(b)(3). Therefore, the instant PCRA petition, initially filed on January 18, 2023, is facially untimely.

We will address Rorrer's first two claims together. Rorrer raises a *Brady* claim in an attempt to satisfy the newly-discovered fact exception under section 9545(b)(1)(ii). Rorrer's Brief at 19-34. She alleges that she discovered laboratory notes belonging to Dr. DiZinno in 2022 after a federal magistrate judge ordered the Commonwealth and FBI to open its files. *Id.* at 21, 23-24; *see also id.* at 31-32 (noting the Commonwealth suppressed these notes and did not previously provide them to Rorrer). She acknowledges that she previously received some of Dr. DiZinno's notes, but failed to receive all of them, particularly the pages identifying that the seatback hairs were not artificially treated whereas her hair sample was artificially treated. *Id.* at 21, 22, 25-26, 28-29. In apparent support for her claim, she observes that no testimony was elicited about artificial treatment of the hair samples at trial. *Id.* at 25-27. Rorrer disagrees with the PCRA court's finding that these notes were repeatedly referenced at trial, contending Dr. DiZinno only referenced his notes one time in response to the question of

when he received hair samples from Joann and Rorrer and that he gave no indication what notes he was referencing. *Id.* at 24-25. She further argues that she was duly diligent in seeking this information, as was found by the federal magistrate judge who granted her request for discovery of FBI and police records related to the DNA evidence. *Id.* at 23-24.

The basis of Rorrer's claim is her view that the seatback hairs were switched with her own hair—because her hair was artificially treated in December 1994, if she had left the seatback hairs, those hairs would also have been artificially treated. *Id.* at 28-29, 31. She notes that the Commonwealth experts described the color of the seatback hairs differently, and there is no record how many hairs were taken from Rorrer for testing. *Id.* at 30-31. Rorrer concludes that "it is apparent that the hairs tested by the FBI were not the … seatback hairs, but [] Rorrer's own hair samples[,]" and the missing pages of Dr. DiZinno's notes "would have demonstrated that the chain of custody was flawed, and the testing was unreliable." *Id.* at 31.

"When considering a claim seeking to invoke section 9545(b)(1)(ii), the petitioner must establish only that (1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence." *Commonwealth v. Cox*, 146 A.3d 221, 227 (Pa. 2016) (citation omitted). "Due diligence demands that the petitioner take reasonable steps to protect his own interests; a petitioner must explain why [s]he could not have learned the new facts earlier with the exercise of due

diligence." ***Commonwealth v. Sanchez***, 204 A.3d 524, 526 (Pa. Super. 2019) (citation omitted). "[T]he focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Lopez***, 249 A.3d 993, 999 (Pa. 2021) (citation, quotation marks, and emphasis omitted).

The PCRA court rejected Rorrer's claim, finding that the laboratory notes were not new evidence and were discoverable at the time of trial. PCRA Court Order, 6/17/2024, at 3-4 n.i. It concluded that Rorrer failed to show the notes were not completely furnished to the defense before trial. ***Id.*** at 3 n.i. The PCRA court noted that "a review of the record reveals a myriad of references to both expert reports and notes, as every expert who testified made such reference." ***Id.*** (emphasis omitted). Further, the court indicated that even if the notes were not provided to the defense, Rorrer "failed to offer any reasonable explanation with regard to her lack of knowledge of their existence prior to the conclusion of the trial or why she could not have discovered the notes through the exercise of reasonable due diligence." ***Id.***

The record supports the PCRA court's finding that there were several references to Dr. DiZinno's notes and reports at trial. ***See, e.g.,*** N.T., 11/17/1997, at 52 (district attorney stating that "[a]ll FBI laboratory notes regarding mitochondrial, they are coming from [Dr.] DiZinno today, he promised me, by Federal express"); N.T., 11/18/1997, at 38 (District attorney stating: "I have all [Dr.] DiZinno's discovery material, it came Federal

expressed to me late yesterday. I missed it because I was in court. I have it and I'm prepared to give it to counsel."); N.T., 2/20/1998, at 173 (Dr. DiZinno referred to his notes when asked a question about his report); *id.* at 68-69 (Harold Deadman ("Deadman"), a former FBI DNA analyst, testified that the FBI laboratory report regarding the hair samples contained "notes that were generated at the time or prior to this report being sent out"); N.T., 2/25/1998, at 231 (defense witness, William Shields testified that he had "received from the FBI, from both Dr. DiZinno and [] Deadman, all their reports and their notes in this case"); N.T., 3/4/1998, at 104 (Matt Stoneking, the Commonwealth's DNA expert, acknowledged that he reviewed Dr. DiZinno's "report and notes in regard to the testing that he did on the three hairs for mitochondrial DNA analysis"). As Rorrer correctly observes, however, none of the references specifically identified notes related to whether the tested hairs were artificially treated.

The issue raised by Rorrer in her PCRA petition was not that she never received any of Dr. DiZinno's notes, but that there were several missing pages—those concerning the artificial treatment of her hair samples versus the seatback hairs. At the hearing on the instant petition, trial counsel testified that he did not receive the complete set of notes and would have questioned Dr. DiZinno about the content of the purported missing notes if they had been passed. N.T., 11/6/2023, at 60-61. Conversely, the prosecutor testified that he provided all of Dr. DiZinno's notes to the defense. *Id.* at 105-

06. The prosecutor further acknowledged that he did not introduce Dr. DiZinno's notes at trial. *Id.* at 109.

The PCRA court made no credibility determination as to whether Rorrer had a complete set of Dr. DiZinno's notes. Nor could the judge who authored the PCRA court opinion do so, as the judge who presided over the PCRA hearing was transferred to another division after the hearing but before rendering a decision on the instant petition. Without any credibility determinations from the hearing, we are unable to conclude, based on the conflicting testimony, whether Rorrer received all of Dr. DiZinno's notes at the time of trial or exercised due diligence in obtaining the missing notes. Significantly, there is no clear evidence that the entirety of Dr. DiZinno's notes were provided to Rorrer. Thus, we do not find support for the PCRA court's reasoning in the record.

Nevertheless, we conclude that the PCRA court properly found that Rorrer did not plead and prove the newly-discovered fact timeliness exception. *See Commonwealth v. Parker*, 249 A.3d 590, 595 (Pa. Super. 2021) ("this Court may affirm a PCRA court's order on any legal basis"). Rorrer contends that the missing pages of notes show that the chain of custody related to the DNA testing of the seatback hairs was flawed—that the seatback hairs were switched with her own for DNA testing. Rorrer previously raised nearly identical claims challenging the chain of custody, which were rejected in both

her third and fourth PCRA petitions. As this Court explained in a prior decision addressing this issue:

> [Rorrer] has already litigated her claim that her exemplar hairs were switched for the seatback hairs. As noted, after Orchid reported that all six seatback hairs belonged to [Rorrer] …, [she] immediately retracted her position that the chain of custody for the seatback hairs in the slides was unassailable. At that time, she premised that switch on a mistake rather than a conspiracy. The PCRA court[, in addressing Rorrer's third PCRA petition,] thereafter specifically rejected counsel's assertion that one of [Rorrer's] exemplar hairs "could mistakenly have been inserted as a hair collected from the seatback." PCRA Court Opinion, 6/25/[20]09, at 15. It concluded that the chain of custody for the three mounted seatback hairs was not infirm. *Id.*

*Commonwealth v. Rorrer*, 2017 WL 4861621, at *7; *accord Rorrer*, 2020 WL 194926, at *3; *see also* N.T., 12/1/2006, at 60 (during the hearing on the PCRA petition seeking DNA testing, Rorrer's counsel acknowledged there was no chain of custody issues regarding the seatback hairs, noting the "hairs are not tainted by what we believe is a questionable chain of custody").[2]

_____

[2] Furthermore, and in any event, Rorrer wholly ignores the fact that DNA testing of the setback hairs revealed Rorrer to be the source of the hairs. She also does not establish that the fact her hair was artificially treated while the seatback hairs were not would somehow change the DNA results. To the contrary, the unrefuted evidence at the hearing shows that the differences between the seatback hairs and her hair samples does not call into question or otherwise impact the DNA results. *See, e.g.,* N.T., 11/6/2023, at 210 (wherein Dr. DiZinno states that the fact the hair was artificially treated does not affect DNA testing); *see also id.* at 203, 209 (noting that the color of the tested hairs were different does not prevent the hairs from being similar, and there are other aspects of the hairs to determine whether or not they are similar enough to proceed to the DNA testing).

The newly-discovered fact exception cannot be based on claims that have been raised previously. *Commonwealth v. Maxwell*, 232 A.3d 739, 745 (Pa. Super. 2020); *see also Lopez*, 249 A.3d at 999 (stating a "newly identified source in further support for … previously known facts" is insufficient to satisfy section 9545(b)(1)(ii)). As Rorrer's challenge to the chain of custody for the seatback hairs has been raised by her in PCRA petitions dating back more than fifteen years, she has not satisfied the newly-discovered fact timeliness exception. As such, we cannot consider her underlying *Brady* claim. *See Commonwealth v. Mickeals*, 335 A.3d 13, 22 (Pa. Super. 2025) (noting "that a PCRA petitioner must first meet the statutory exceptions of the timeliness requirements before the merits of their *Brady* claim can be considered") (citation omitted).

In her third claim, Rorrer argues that the collective *Brady* violations compel a new trial. Rorrer's Brief at 41-42. She alleges there has been a pattern of suppressed evidence, including the Mr. Traupman statements, the fingernail evidence, whether the tested hair samples were switched, and the missing DiZinno notes. *Id.* at 41. According to Rorrer, this misconduct undermined the reliability of the testing process and confidence of the outcome of the trial. *Id.* at 42.

Rorrer failed to raise the collective *Brady* claim in her PCRA petition. *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. 2011) (noting "issues not raised in a PCRA petition cannot be considered on appeal") (citation

omitted). In any event, Rorrer did not plead any of the timeliness exceptions in conjunction with this claim in her brief on appeal. **See** 42 Pa.C.S. § 9545(b)(1). Therefore, we cannot address the claim.

In her final claim, Rorrer raises several arguments in support of her request that this Court remand the matter for an evidentiary hearing. **See** Rorrer's Brief at 45-55. We will address her claims in turn. First, she argues that the PCRA court erred in making credibility determinations in dismissing her PCRA petition on a cold record. **Id.** at 46-47. Specifically, Rorrer claims that the PCRA court made credibility findings in determining that Dr. DiZinno's notes were not new evidence and she did not exercise due diligence. **Id.** at 46.

The record does not support Rorrer's contentions, as the PCRA court's decision plainly reflects that it made findings based on the record. **See** PCRA Court Order, 6/17/2024, at 3 n.i. As recited above, the PCRA court did not make any credibility determinations following the hearing. Instead, after a new judge was assigned to the case, the PCRA court found, based on the record evidence, "the existence of Dr. DiZinno's laboratory notes was not unknown to [Rorrer]," and even if she did not have the notes, "she failed to offer any reasonable explanation with regard to her lack of knowledge of their existence prior to the conclusion of trial or why she could not have discovered the notes through the exercise of reasonable due diligence." **Id.** Rorrer does

nothing to establish that the PCRA court's findings were based on credibility determinations. Thus, her claim in this regard is without merit.

Rorrer's remaining bases for an evidentiary hearing are based upon her contention that PCRA counsel provided ineffective assistance. **See** Rorrer's Brief at 48-55.

In **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), the Pennsylvania Supreme Court held that a "PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting pro se, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." **Id.** at 401 (footnote omitted). **Bradley**, however, occurred in the context of a first, timely PCRA petition. **Id.** at 384. We have held that "[n]othing in **Bradley** creates a right to file a second [or subsequent] PCRA petition outside the PCRA's one-year time limit as a method of raising ineffectiveness of PCRA counsel or permits recognition of such a right." **Commonwealth v. Stahl**, 292 A.3d 1130, 1136 (Pa. Super. 2023); **see also Commonwealth v. Laird**, 331 A.3d 579, 583 (Pa. 2025) (holding "**Bradley** did not establish an equitable exception to the PCRA's time-bar" and "its rationale cannot be extended to create one"). Indeed, "[b]ecause courts lack jurisdiction to hear an untimely PCRA petition, they necessarily lack jurisdiction to consider ancillary matters" like ineffective assistance of counsel claims. **Laird**, 331 A.3d at 599.

Rorer seeks to raise PCRA counsel's ineffectiveness in an untimely PCRA petition and fails to plead or prove any timeliness exception in this regard. *See Commonwealth v. Branthafer*, 315 A.3d 113, 123 (Pa. Super. 2024) ("*Bradley* expanded the opportunities afforded a petitioner to raise ineffectiveness claims, albeit still requiring that the petitioner satisfy the jurisdictional one-year time-bar requirement."). We therefore are unable to consider the merits of these claims as well.

As the underlying PCRA petition was untimely, and Rorer failed to plead and prove that any exceptions to the time bar apply, neither the PCRA court nor this Court have jurisdiction to consider the merits of Rorer's claims. *See Commonwealth v. Derrickson*, 923 A.2d 466, 468 (Pa. Super. 2007) ("Without jurisdiction, we simply do not have the legal authority to address the substantive claims.") (citation omitted). We therefore find no abuse of discretion in the PCRA court's decision to deny Rorer's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/22/2025