J-S47042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MOHAMMAD OSTAD SADEGHE | : | |
| | : | |
| Appellant | : | No. 2041 EDA 2025 |

Appeal from the PCRA Order Entered July 1, 2025
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003105-2020

BEFORE: PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY BECK, J.:            **FILED MARCH 13, 2026**

Mohammad Ostad Sadeghe ("Sadeghe") appeals from the order entered by the Bucks County Court of Common Pleas dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA").[1] Because Sadeghe filed an untimely PCRA petition and failed to establish an exception to the statutory time bar, we affirm.

The PCRA court summarized the facts and procedural history of this case as follows:

> [O]n May 22, 2020, … Officer Brian Celauro of the Bensalem Township Police Department responded to the Home Depot located at 1336 Bristol Pike, Bensalem for a report of retail theft in progress. Upon arrival, Officer Celauro met with Loss Prevention Officer Kevin Dupell, who had a male stopped at the exit doors. Mr. Dupell allegedly observed [Sadeghe] conceal four electric grinders in an empty box. [Sadeghe] walked past all

---

[1] 42 Pa.C.S. §§ 9541-9546.

points of sale and failed to make payments for the stolen/concealed merchandise. The total value of the theft was $287.94.

\* \* \*

[Sadeghe] entered a guilty plea on July 7, 2022, for two counts of retail theft and one count of criminal mischief. [Sadeghe]'s sentence was time served to no more than 23 months [of] imprisonment at [the] Bucks County Correctional Facility. [Sadeghe] had already served four months and twenty-nine days of his incarceration and after the guilty plea, [he] was immediately paroled. [Sadeghe did not file a direct appeal from his judgment of sentence.]

On November 14, 2024, [Sadeghe] was sent a notice to appear from the Department of Homeland Security alleging that he was a citizen of Iran and not the United States, that he was a lawful permanent resident of the United States, and that he had been convicted and sentenced in punishment of the crime of retail theft.

PCRA Court Opinion, 9/15/2025, at 2 (unnecessary capitalization omitted).

[Sadeghe] entered the United States as a lawful permanent resident on or around January 14, 2008. According to [Sadeghe], he is awaiting removal from the United States because of his guilty plea in the present matter. Currently, [Sadeghe] is incarcerated and in the custody of the Department of Immigration and Customs Enforcement at the Moshannon Correctional Center.

[According to the notice to appear, Sadeghe] is subject to removal under Section 237 (a)(2)(A)(iii) of the Immigration and Nationality Act (hereinafter "Act"), which states that removal is proper if, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43)(G) of the Act, a law relating to a theft offense or burglary offense for which the term of imprisonment of at least one (1) year was imposed. …

*Id.* at 1-2 (unnecessary capitalization omitted).

[Sadeghe] filed [a] pro se PCRA [petition] on February 7, 2025.

On March 3, 2025, the [PCRA court] entered an order appointing Mr. Patrick McMenamin, Esquire to represent [Sadeghe]. The order directed counsel to file an amended PCRA petition on or before May 2, 2025. …

On May 2, 2025, [Sadeghe] filed his amended PCRA petition. In the petition, [Sadeghe] claim[ed] that his immigration issue meets the exception to the PCRA's one-year time-bar set forth in 42 Pa.C.S. § 9545(b)(1)(ii), in that it constitutes a "newly-discovered fact." Further, [Sadeghe] alleged ineffective assistance of counsel because he was not advised of the possibility of facing deportation due to his guilty plea.

\*     \*     \*

On June 3, 2025, [the PCRA court] issued an order in accordance with Pa.R.Crim.P. 907(1), providing notice of its intent to dismiss the PCRA petition. The order detailed that [the PCRA court] found no genuine issues of material fact, [Sadeghe] had failed to present any claims warranting relief, and that additional judicial proceedings would serve no purpose. These points articulated the basis for [the court]'s intention to dismiss the petition without a hearing. A notice of intent to dismiss was issued, and [Sadeghe] was provided twenty (20) days to respond to the Rule 907 notice.

[Sadeghe] did not file a substantive response to the Rule 907 notice.

On July 1, 2025, [the PCRA court] issued an order denying and dismissing [Sadeghe]'s PCRA petition without an evidentiary hearing. The order also directed the Bucks County Clerk of Courts to serve a copy of the order to [Sadeghe] by certified mail and return receipt, pursuant to Pa.R.Crim.P. 907(4).

On July 22, 2025, forty-nine days following the [PCRA court]'s issuance of the Rule 907 notice of intent to dismiss, [Sadeghe] submitted a pro se response thereto.

On July 29, 2025, [the PCRA court] sent a letter to [Sadeghe]'s counsel, Mr. McMenamin, enclosing a copy of [Sadeghe]'s pro se response.

\*     \*     \*

On July 31, 2025, [Sadeghe] filed notice of appeal to the Superior Court of Pennsylvania. …

*Id.* at 2-4 (unnecessary capitalization omitted).

Sadeghe presents the following issues for review:

I.    Did the [PCRA] court err in dismissing the petition without a hearing where [Sadeghe] presented an issue with merit, sufficiently pled facts which established [plea] counsel's failure to properly advise [Sadeghe] of the immigration consequences of his plea, established prejudice based on [plea] counsel's failures and sufficiently raised an exception to the PCRA's time[]bar provisions?

II.   Did the [PCRA] court err in its failure to fully comply with Pa.R.Crim.P. 907, where the court did not give notice of its intention to dismiss and provide [Sadeghe] with the reasons for the dismissal, which precluded [him] from amending, correcting, or addressing any defects in the petition or issues relied upon by the court for dismissal of the petition?

Sadeghe's Brief at vi.[2]

"We review the denial of PCRA relief by examining whether the PCRA court's conclusions are supported by the record and free from legal error." ***Commonwealth v. Johnson***, 289 A.3d 959, 979 (Pa. 2023). "[W]e defer to the factual findings of the post-conviction court, which is tasked with hearing the evidence and assessing credibility." *Id.* Our standard of review of a PCRA court's legal conclusions, however, is de novo. *Id.*

In Sadeghe' first issue, the threshold question we must address is whether he timely filed his PCRA petition or, alternatively, whether he satisfied

_____

[2]  We reordered these issues to streamline our review.

an exception to the statutory time bar. *See Commonwealth v. Brown*, 141 A.3d 491, 499 (Pa. Super. 2016) ("Crucial to the determination of any PCRA appeal is the timeliness of the underlying petition. Thus, we must first determine whether the instant PCRA petition was timely filed.") (quotation marks and citation omitted). "The timeliness requirement for PCRA petitions is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition." *Id.* (quotation marks and citation omitted); *see also Commonwealth v. Fantauzzi*, 275 A.3d 986, 994 (Pa. Super. 2022) ("the timeliness of a PCRA petition is jurisdictional and [] if the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief"). "As the timeliness of a PCRA petition is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Callahan*, 101 A.3d 118, 121 (Pa. Super. 2014) (citation omitted).

The PCRA sets forth the following mandates governing the timeliness of any PCRA petition:

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
>> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>>
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

- 5 -

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). A petitioner must file a petition invoking one of these exceptions "within one year of the date the claim could have been presented." *Id.* § 9545(b)(2).

Because the trial court sentenced Sadeghe on July 7, 2022, and he did not file a direct appeal, his judgment of sentence became final on August 7, 2022, following the expiration of the thirty-day period for filing a notice of appeal. *See* 42 Pa.C.S. § 9545(b)(3); Pa.R.A.P. 903(a) (stating that "the notice of appeal … shall be filed within 30 days after the entry of the order from which the appeal is taken"). Sadeghe therefore had one year from that date to file a timely PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1). As he did not file the instant petition until February 7, 2025, it is facially untimely—a determination he does not contest. *See* Sadeghe's Brief at 1-2, 14-15.

Instead, Sadeghe argues that he satisfied the newly-discovered fact exception to the time bar. *See* Sadeghe's Brief at 12-16. Specifically, he asserts that his plea counsel was ineffective because she informed him at the time he pled guilty that his guilty plea would not have any consequences relating to his immigration status. *See id.* Thus, Sadeghe contends that he was unaware that his guilty plea could result in him being subject to

deportation—a fact he claims he could not have ascertained until he received notice from the Department of Homeland Security.  *See id.*

"To invoke the newly-discovered facts exception, a petitioner must plead and prove facts that were unknown to the petitioner despite the exercise of due diligence."  ***Commonwealth v. Branthafer***, 315 A.3d 113, 128 (Pa. Super. 2024).  "Due diligence does not require perfect vigilance and punctilious care, but merely a showing the party put forth reasonable effort to obtain the information upon which a claim is based."  ***Id.*** (citation and brackets omitted).  A petitioner must, however, "offer evidence that he exercised due diligence in obtaining facts upon which his claim was based." ***Id.*** (citation omitted).

> The question of whether a petitioner, based upon the circumstances of a particular case, would have been unable to discover the newly-discovered fact notwithstanding the exercise of due diligence is a question that requires fact-finding, and the PCRA court, as the fact-finder, should determine whether a petitioner demonstrated this requirement of the exception.

***Id.***

In ***Padilla v. Kentucky***, 559 U.S. 356 (2010), the Supreme Court of the United States considered the extent to which criminal counsel must advise noncitizen clients regarding the immigration consequences of pleading guilty to a crime.  ***Id.*** at 374.  The Supreme Court ruled that criminal defense counsel must inform a noncitizen client "whether his plea carries a risk of deportation." ***Id.***  When immigration "law is not succinct and straightforward … a criminal defense attorney need do no more than advise a noncitizen client that pending

criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. "But when the deportation consequence is truly clear … the duty to give correct advice is equally clear." *Id.*

This Court has interpreted the duty to provide correct advice articulated in *Padilla* as a requirement to "inform a noncitizen defendant as to whether a plea carries a **risk** of deportation." *Commonwealth v. Escobar*, 70 A.3d 838, 841 (Pa. Super. 2013) (emphasis added). This onus is on counsel, not the court. *Commonwealth v. Rachak*, 62 A.3d 389, 395 (Pa. Super. 2012). The duty to provide correct advice concerning the immigration consequences of a guilty plea does not necessarily require criminal counsel to advise a client that pleading guilty will result in a definite deportation. *Escobar*, 70 A.3d at 841. Even if the offense seems to be a deportable offense pursuant to the federal statute, counsel cannot predict with absolute certainty whether the "U.S. Attorney General and/or other personnel would necessarily take all the steps needed to institute and carry out [an] actual deportation." *Id.*

The record reflects that in his written guilty plea colloquy, Sadeghe answered "Yes" to the question, "Do you understand that if you are not a United States citizen a guilty plea may result in action by the federal immigration enforcement agencies up to and including deportation?" Written Plea Colloquy, 7/7/2022, ¶ 49. We emphasize that "[a] defendant is bound by statements made during a plea colloquy and a defendant may not later offer reasons for withdrawing the plea that contradicts the statements he

made when he pled." ***Commonwealth v. Kapellusch***, 323 A.3d 837, 848 (Pa. Super. 2024) (citation omitted); ***see also Commonwealth v. Pier***, 182 A.3d 476, 480 (Pa. Super. 2018) ("[a] person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy"). Additionally, with his pro se PCRA petition, Sadeghe submitted a letter from his plea counsel stating that she "advised at that time that your guilty plea could result in action by the federal immigration enforcement agencies up to and including deportation." PCRA Petition, 2/7/2025, Ex. 6 at 2.

Thus, the record provides no support for his claims that he was unaware of the consequences pleading guilty could have on his immigration status. Rather, the record indicates that Sadeghe was aware at the time he pled guilty that his plea potentially could have consequences for his immigration status that included deportation. As Sadeghe was aware when he pled guilty of the potential consequences his plea could have on his immigration status, he cannot satisfy the newly-discovered fact exception to the PCRA. ***See Branthafer***, 315 A.3d at 128.

Sadeghe also attempts to argue that his claim satisfies to the newly-discovered fact exception to the PCRA's time bar because "the current presidential administration's draconian crackdown on immigrants, and the deportation or removal thereof, criminal and law-abiding alike, creates a new

fact that excuses the late filing of a PCRA petition." Sadeghe's Brief at 14. He maintains that "there is no possible way that [he] could have determined that once the current presidential administration took office that it would begin deporting criminal and non-criminal individuals from this country." *Id.* at 15.

This argument is waived, as Sadeghe failed to raise a claim that the current presidential administration's immigration policy constituted a newly-discovered fact that satisfied the PCRA's time bar in his PCRA petition. *See generally* Amended PCRA Petition, 5/2/2025. "It is well[]settled that issues not raised in a PCRA petition cannot be considered on appeal." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. 2011). Even if he had not waived this argument, Sadeghe fails to explain how his lack of knowledge of the current presidential administration's immigration policy circumvents the fact that he indicated that he was aware when he pled guilty that his guilty plea could potentially lead to his deportation. *See* Sadghe's Brief at 14-15.

Accordingly, based on the foregoing, we conclude that the PCRA court did not err in determining that Sadeghe failed to establish the newly-discovered fact exception to the PCRA's time bar.

In his second issue, Sadeghe argues that the PCRA court erred because it provided him with a deficient Rule 907 notice. *See* Sadeghe's Brief at 7-12. He asserts that the PCRA court's Rule 907 notice failed to provide him "with the reasons for the dismissal and/or fails to notify [Sadeghe] of its intention to dismiss a correctable defect in his petition [and as] worded, the

notice does not provide to [Sadeghe] an opportunity to respond to the court's reasons for dismissal." *Id.* at 8. Sadeghe further asserts that the notice failed

> to advise as to what analysis the PCRA [court] undertook to determine the timeliness of [his petition], whether any of the exceptions to the time[]bar were considered, and therefore [he] had no opportunity prior to dismissal to provide further evidence, documentation, or proof of the existence of an exception to the time[]bar.

*Id.* at 11. He contends that this court should remand the case to the PCRA court "with a directive that the PCRA court issue a new amended Rule 907 notice, setting forth the reasons for the intended dismissal, so that [he] can properly respond in detail to the PCRA court's intended dismissal." *Id.* at 12 (unnecessary capitalization omitted).

Pennsylvania Rule of Criminal Procedure 907(1) states that, upon review of a PCRA petition,

> If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice.

Pa.R.Crim.P. 907(1).

Assuming, without deciding, that the PCRA court's Rule 907 notice was deficient, this claim nonetheless fails. As this Court has explained, "our Supreme Court has held that where the PCRA petition is untimely, the failure to provide such notice is not reversible error." *Commonwealth v. Lawson*,

90 A.3d 1, 5-6 (Pa. Super. 2014) (citing **Commonwealth v. Pursell**, 749 A.2d 911, 917 n.7 (Pa. 2000)). As we have concluded that Sadeghe's PCRA petition is untimely and that he failed to plead and prove a timeliness exception, his claim that the PCRA court failed to provide a sufficient Rule 907 notice does not entitle him to relief, as it is immaterial in this case whether the PCRA court's notice was fully compliant with Rule 907. **See id.**; **see also Commonwealth v. Kutnyak**, 781 A.2d 1259, 1263 (Pa. Super. 2001) (recognizing that under the prior version of Rule 907 (Pa.R.Crim.P. 1507), the absence of notice, standing alone, does not provide a basis to reverse the dismissal of an untimely PCRA petition).[3]

As Sadeghe has failed to plead and prove an exception to the PCRA court's time bar or otherwise raise a meritorious claim entitling him to relief, we conclude that the PCRA court did not err in dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2026

---

[3] We note that the PCRA court, in accordance with Rule 907, afforded Sadeghe twenty days to respond to the Rule 907 notice. **See** Pa.R.A.P. 907(1); **see also** Rule 907 Notice, 6/3/2025. Sadeghe, however, failed to file a response within twenty days.