J-S08003-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES FINCH | : | |
| | : | |
| Appellant | : | No. 1265 EDA 2025 |

Appeal from the PCRA Order Entered May 2, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005865-2009

BEFORE: PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.: **FILED JUNE 2, 2026**

Charles Finch appeals from the order of the Court of Common Pleas of Philadelphia County denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Finch challenges the PCRA court's conclusion that after discovered evidence from new DNA testing did not warrant a new trial. Based on our review of the record, we find that Finch's PCRA petition was untimely and he failed to plead or prove a timeliness exception. Therefore, we affirm the PCRA court, albeit on alternative grounds.

We glean the following relevant facts from the certified record. On or about January 5, 2009, K.L., a sixteen year old female diagnosed with cerebral palsy disclosed to employees at her special needs school that during the previous night her mother's paramour, Finch, sexually assaulted her. That same day a rape kit was performed. On January 13, 2009, Finch was arrested

and charged with rape, unlawful contact with a minor, sexual assault, and indecent assault.

Relevant to the instant appeal, the Commonwealth submitted the rape kit samples, a pair of panties, and a pair of jeans for serology testing, P-30 testing, and microscopic examination to test for the presence of semen and sperm.[1] Notably, although Finch provided a DNA sample, these tests did not test for the presence of DNA. The serology test was inconclusive for the vaginal, vulvar, rectal, and oral samples, and not detected for the perianal sample. The P-30 test results were "not detected" and the microscopic examination for sperm indicated that none were observed.

_____

[1] The PCRA court explained the various testing methods used in 2009:

> There was a serology testing, an acid phosphatase test, which is a first-line test designed to identify if there is any biological material present in a sample. In particular, the test can provide a presumptive positive, which identifies when semen is present . . . .
>
> [P-30] tests for the presence of prostate-specific hormone. At the time, in 2009, this test was considered a confirmatory test for the presence of semen. Since the time of Mr. Finch's trial, the P-30 test has fallen into disfavor as a confirmatory test because subsequent research has shown that false positives can result. It is still used as a presumptive test for screening samples.

N.T., 5/2/25, at 45-46. Additionally, microscopic examination is done to observe the presence of sperm which is not always present in semen. *See id.* at 46. We commend the PCRA court for its detailed discussion of the various testing methods relevant to this case.

A jury trial commenced on May 8, 2012. The chemical test results were never submitted into evidence. However, the defense mentioned the test results in its opening statement

> What the Commonwealth doesn't tell you is that when they get to [the hospital], they do a very thorough examination of [K.L.]. They do a physical examination. They take swabs so they can later do some tests for DNA and some for the components of semen to determine if there's any of that material there, not just from [K.L.] but from the clothes she was wearing that night and some of the bedclothes and surroundings of the area where this supposedly happened, and the results of that examination were everything was perfectly normal. . . . There's no physical evidence whatsoever that anyone had had any sexual contact with [K.L.].

N.T., 5/8/12, at 55-56.

The Commonwealth presented seven witnesses, including K.L. Three of the witnesses were employees from K.L.'s special needs school. In general, they each testified that K.L.'s behavior changed after she disclosed the incident. Additionally, the Commonwealth presented the nurse practitioner who conducted the rape kit, K.L.'s mother, and an assistant district attorney who spoke with K.L. prior to the preliminary hearing.

Finch called three witnesses, including the lead detective, Alan Fried. The defense asked Detective Fried about the test results.

> TRIAL COUNSEL: Now these [property receipts] both indicate that they were sent to—I'm sorry. Where were these items of property sent to after you collected them?
>
> DETECTIVE: Our chemical lab, which analyzes them.
>
> TRIAL COUNSEL: Okay.
>
> DETECTIVE: For DNA.

- 3 -

TRIAL COUNSEL: And as the assigned detective, you're going to receive notice of whatever results of those examinations, correct?

DETECTIVE: Yes.

TRIAL COUNSEL: And what were the results as you learned based on this submission?

DETECTIVE: I don't have the paper in front of me, so I don't recall without seeing the paperwork.

TRIAL COUNSEL: Well, would it refresh your recollection if I told you that all the DNA and biological materials tested came back negative?

DETECTIVE: That's possible, yes.

N.T. 5/11/12, at 116–18.

In its closing the defense erroneously stated that Finch's DNA was tested and did not match any of the samples. **See** N.T., 5/15/12, at 44-45.

The jury convicted Finch of all charges. On November 2, 2012, the court sentenced him to 20 to 40 years' incarceration. We affirmed his judgment of sentence. **See Commonwealth v. Finch**, 2014 WL 10752245, at *1 (Pa. Super. filed Dec. 11, 2014). On September 28, 2015, the Pennsylvania Supreme Court denied his petition for allowance of appeal.

On March 13, 2017, Finch filed a *pro se* PCRA petition that was dismissed as untimely. On April 16, 2021, Finch filed another *pro se* PCRA petition. Thereafter, he filed a *pro se* motion requesting DNA testing pursuant to 42 Pa.C.S.A. § 9543.1. The PCRA court denied his request for DNA testing on January 18, 2022.

On April 27, 2022, Finch filed a counseled motion requesting DNA testing. On July 29, 2022, the Commonwealth entered a stipulated agreement with Finch to conduct new testing. Thereafter, Finch filed an amended motion for DNA testing on August 16, 2022. On November 23, 2022, the Commonwealth filed a letter explaining why it did not oppose the motion for DNA testing. In its letter, the Commonwealth explained that the presence of male DNA could be found in the samples using new DNA testing procedures that were not available in 2009 and "while the absence of Finch's DNA alone, or the inability to detect any male DNA, would not necessarily establish actual innocence, results consistent with there being an alternative suspect could potentially establish actual innocence and therefore would satisfy § 9543.1." Commonwealth's Letter, 11/23/22, at 5 (footnote omitted).

On January 4, 2023, the PCRA court granted the motion and, on February 24, 2023, the DNA test results came back negative for male DNA. On March 28, 2023, appointed counsel filed an amended PCRA petition raising a claim of after discovered evidence. The Commonwealth filed a motion to dismiss.

The court held a hearing on April 21, 2025. At the hearing, the Commonwealth and the defense each presented an expert witness. Both experts testified that the DNA evidence does not conclusively establish or disprove whether a sexual assault occurred. At the conclusion of the hearing, the PCRA court denied Finch's petition. In rendering its decision, the PCRA

court explained the differences between the chemical tests performed in 2009 and the new DNA tests.

> The 2023 tests were more robust than the 2009 tests. **The 2009 tests were looking for the presence of semen and sperm**. The 2009 tests did not do DNA testing. The 2009 test results preliminarily indicated inconclusive results; meaning, they could not definitively say there was no semen on the rape kit samples. But the confirmatory testing, P-30, and microscope [examination] all came back negative.
>
> **The 2023 tests expressly tested for DNA**. The 2023 tests had definitive results that showed the absence of any male DNA on any of the rape kit samples. The 2023 tests also showed definitively that there was no biological material on the complainant's clothing. The tests performed in 2023 were not available in 2009. The tests in 2023 were more sensitive than the 2009 tests; meaning, if there had been male DNA, sperm or semen, the 2023 tests would have been more likely to report a positive result than the 2009 test.

N.T., 5/2/25, at 50-51 (emphases added).

Finch appealed and both he and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925.[2]

Finch raises the following issues for our review.

> 1. Did the PCRA court err in finding that the after-discovered DNA evidence was not likely to change the outcome of Charles Finch's (Appellant) criminal proceeding notwithstanding the after-discovered evidence that rebuts the Commonwealth's overall theory of the case and disproves a key inference that the prosecution and finder of fact relied on to establish the intent necessary for conviction?

---

[2] The PCRA court authored a brief statement in lieu of an opinion in which it directed this Court to the portion of the hearing transcript where it explained its reasoning for denying Finch's petition.

2. Did the PCRA court err to the extent that it held the after-discovered  evidence was immaterial or not exculpatory?

3. Did the PCRA court err to the extent that it held that [Finch] failed to establish a prima facie case of actual innocence if exculpatory results of DNA testing could be established?

Appellant's Brief, at 2 (unnecessary capitalization omitted).[3]

> Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa. Super. 2021) (citation omitted).

The issues raised by Finch challenge the PCRA court's denial of his after discovered evidence claim and will be addressed together. However, before addressing the substantive claim we must consider whether Finch's petition was timely.

_____

[3] In his concise statement and statement of questions section of his brief, Finch purportedly raises the issue of whether "the PCRA court err[ed] by not considering [his] claims under the United States and Pennsylvania Constitutions[.]" Appellant's Brief, at 2. However, Finch does not advance any argument on this issue in his brief. *See id.* at 7-17. Further, as the PCRA court points out, Finch waived this issue by failing to raise it with the PCRA court. *See* 1925(a) Statement, 8/14/25, at 2-3. Therefore, the issue does not warrant our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Pollick*, 314 A.3d 882, 884 n.3 (Pa. Super. 2024 ("Any issues identified in [a]ppellant's statement of questions presented that were not set forth in the argument section of [a]ppellant's brief are deemed abandoned and, therefore, waived on appeal.") (citation omitted).

"The timeliness of a PCRA petition is a jurisdictional requisite." **Commonwealth v. Shiloh**, 170 A.3d 553, 557 (Pa. Super. 2017) (citation omitted). "[I]f the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief." **Commonwealth v. Fantauzzi**, 275 A.3d 986, 994 (Pa. Super. 2022) (citations omitted). Here, the PCRA court did not directly address the timeliness of the petition. "Even though the PCRA court failed to address the timeliness of [the] petition, we may do so *sua sponte*." **Commonwealth v. Beatty**, 207 A.3d 957, 963-64 (Pa. Super. 2019) (citation omitted).

A PCRA petition, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). Discretionary review by the United States Supreme Court must be sought within 90 days of the Pennsylvania Supreme Court's order denying discretionary review. **See Fantauzzi**, 275 A.3d at 995 (citing U.S. Sup. Ct. R 13(1)).

Here, the Pennsylvania Supreme Court denied discretionary review on September 28, 2015. Accordingly, Finch had until December 28, 2016, to file a timely PCRA petition. Further, his first PCRA petition filed in 2017 had been dismissed as untimely. **See** Order, 7/18/17. Therefore, Finch's instant PCRA

petition was facially untimely and the PCRA court lacked jurisdiction unless Finch pleaded and proved a timeliness exception. *See Fantauzzi*, 275 A.3d at 994.

A facially untimely PCRA petition may be considered timely if a petitioner pleads and proves one of the following exceptions:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). A petition invoking a timeliness exception must be "filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Moreover, "[p]ost conviction DNA testing does not directly create an exception to § 9545's one-year time bar." *Commonwealth v. Pearson*, 320 A.3d 1224, 1229 (Pa. Super. 2024) (citation omitted). "Rather it allows for a convicted individual to first obtain DNA testing which could then be used within a PCRA petition to establish new facts in order to satisfy the requirements of an exception under 42 Pa.C.S.A. § 9545(b)(2)." *Id.* (citation omitted); *see also* 42 Pa.C.S.A. § 9543.1(f)(1).

Applicable here is the newly discovered fact exception. **See** 42 Pa.C.S.A.

§ 9545(b)(1)(ii).

> To invoke the newly-discovered fact time-bar exception the petitioner must establish that (1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence. The facts must be newly-discovered not merely newly-discovered or newly-willing sources that corroborate previously known facts or previously raised claims. Due diligence demands that the petitioner take reasonable steps to protect his own interests; a petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence.

**Commonwealth v. Mickeals**, 335 A.3d 13, 21 (Pa. Super. 2025) (internal quotation marks and citations omitted).

"It is common for a petitioner seeking relief based upon a claim of after-discovered evidence to rely on the same evidence or facts to invoke the newly-discovered facts exception when the PCRA petition is filed more than one year after final judgment." **Commonwealth v. Branthafer**, 315 A.3d 113, 129 n.15 (Pa. Super. 2024), *appeal denied*, 333 A.3d 1266 (Pa. 2025) (citation omitted). However, they are distinct and the petitioner must first satisfy the requirements of the newly discovered facts exception before the court may consider the substantive after discovered evidence claim. **See Commonwealth v. Brown**, 111 A.3d 171, 179 (Pa. Super. 2015).

The parties at the PCRA court level reviewed the substantive claim of after discovered evidence but did not address the preliminary requirements of

the newly discovered timeliness exception.[4] In his PCRA petition Finch invokes the newly discovered fact exception but makes no effort to explain why his claim satisfies the exception and instead focuses on his substantive argument of after discovered evidence. **See generally** Amended PCRA Petition, 3/28/23. He merely states in conclusory fashion that the 2023 DNA test results "constitute [] newly discovered evidence in this case." Amended PCRA Petition, 3/28/23, at 12 (unpaginated). Finch never asserts how he satisfied the due diligence prong of the newly discovered facts exception. Therefore, Finch failed to establish the newly discovered facts exception. **See Commonwealth v. Myers**, 303 A.3d 118, 123 (Pa. Super. 2023) (explaining that the petitioner failed to satisfy the due diligence prong of the newly discovered fact exception because the "PCRA petition and his briefs in this Court completely fail[ed] to explain why he did not learn about" the new fact until later). Accordingly, we affirm the PCRA court's denial of PCRA relief on the alternative basis that Finch's failure to plead and prove a timeliness

_____

[4] In its motion to dismiss the Commonwealth argued that Finch did not meet the newly discovered fact exception because the 2023 test results were not a new fact. **See** Motion to Dismiss, 6/1/23, at 11-12. In its appellate brief, the Commonwealth briefly states that Finch satisfied the newly discovered fact exception "because the results revealed the new fact that the samples were negative for male DNA[.]" Appellee's Brief, at 10-11 n.5. In fact, Finch did not plead the applicability of the newly discovered fact timeliness exception. Similarly, the PCRA court addressed the substantive after discovered evidence claim but did not address the timeliness of the petition when issuing its ruling. **See** N.T., 5/2/2025, at 44-56.

- 11 -

exception deprived this Court and the PCRA court of jurisdiction to address his substantive claim, and he is not entitled to relief.[5]

Furthermore, even if we had jurisdiction to address Finch's after discovered evidence claim, we would conclude that the PCRA court properly found that it lacked merit. The record is clear that the new DNA evidence would not likely result in a different verdict because, despite Finch erroneously telling the jury at trial that tests for his DNA were negative, the jury rendered its verdict based on the testimony presented, and the absence of DNA evidence does not disprove that a sexual assault occurred. **See** N.T., 5/2/25, at 52-53; **Commonwealth v. Heilman**, 867 A.2d 542, 547 (Pa. Super. 2005) ("[i]n DNA as in other areas, an absence of evidence is not evidence of absence."). Additionally, the DNA test results do not "refute[] an assertion on which . . . the Commonwealth placed significant weight[,]" because the Commonwealth did not rely on the presence of DNA to prove its case. **Commonwealth v. Payne**, 210 A.3d 299, 301-02 (Pa. Super. 2019) (*en banc*).

The PCRA Court reviewed the presentation of the DNA evidence, and entered findings of fact and conclusions of law on the record on May 2, 2025,

_____

[5] "[I]t is well settled that where the result is correct, an appellate court may affirm a lower court's decision on any ground without regard to the ground relied upon by the lower court itself." **Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022) (citation omitted).

which addressed whether the proposed evidence would have likely resulted in

a different verdict. The PCRA court concluded:

> Despite the superior and conclusive test results of 2023 testing, Mr. Finch is still not entitled to relief under [the] PCRA. For after-discovered evidence, a [p]etitioner must satisfy a four-prong test.
>
> You must demonstrate that the evidence could not have been obtained prior to the conclusion of trial through the exercise of reasonable diligence; that it is not merely corroborative or cumulative; that it will not be used solely to impeach a witness's credibility and it would likely result in a different verdict if a new trial were granted.
>
> The Commonwealth concedes that the defense has met the first three prongs of this test, and the [c]ourt agrees. However, Mr. Finch's petition fails to satisfy the fourth prong. In particular, these new test results would not likely result in a different verdict.
>
> While the underlying scientific tests present strong and more conclusive evidence, the initial trial did not rely on the 2009 tests. More so, the jury was erroneously told that the 2009 tests came back negative. They were never told the tests were merely looking for semen or sperm.
>
> So while we here in this proceeding know that the 2023 tests are more definitive, the jury in the trial essentially was acting on the same information; namely, that the rape kit was tested for Mr. Finch's DNA and that all the DNA tests came back negative. Therefore, the 2023 test results would not have been more likely to create a different result in the trial.
>
> The [c]ourt notes that this case involved testimony of multiple witnesses, including the complainant herself through the assistance of an augmentative communications service coordinator. The complainant's testimony explained the nature of the assault and identified Mr. Finch as the assailant.
>
> The jury understood that the lack of physical evidence or biological evidence to corroborate her testimony was not necessarily determinative. They decided the case on the basis of the testimony. The underlying strength or weakness of that testimony is not a question for this [c]ourt, and the new DNA test results do

- 13 -

not establish the lack of any assault. It merely fails to corroborate the testimony from the trial.

Nothing in the new test results would unseat the trial result. All the experts testified that the lack of male DNA does not disapprove a sexual encounter happened.

For the reasons stated above, the PCRA petition is denied.

N.T., 05/02/2025, at 51-53. The Commonwealth addressed this same issue in its brief. *See* Appellee's Brief, at 11-13. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/2/2026